## NORTHAM et al. v. CASUALTY CO. OF AMERICA.

(Circuit Court, D. Montana. October, 2, 1909.)

**1. INDEMNITY (§ 7*)—INDEMNITOR—JOINT TORT-FEASOR.**

At common law, an indemnitor is a joint tort-feasor with the indemnitee, where, by reason of legal or other relations, the giving of the indemnity bond implies a request or demand from the indemnitor to the indemnitee, and a consideration inducing him to do the wrongful act, for the injurious consequences of which damages are claimed by a third person.

[Ed. Note.—For other cases, see Indemnity, Dec. Dig. § 7.*]

**2. INDEMNITY (§ 7*)—STATUTES—CONSTRUCTION—"TO BE DONE BY."**

Rev. Codes Mont. § 5653, provides that one who indemnifies another against an act to be done by the latter is liable jointly with the person indemnified, and separately to every person injured by such act. *Held*, that the phrase "to be done by" implies on the part of the indemnitee an agreement or obligation to commit the tort in question, as if the phrase were "an act required (or demanded or requested) to be done by" the indemnitee, and, as so construed, the section is merely declaratory of the common law.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 8; Dec. Dig. § 7.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. INSURANCE (§ 156*)—DEATH—EMPLOYER'S LIABILITY POLICY—ORIGINAL LIABILITY OF INDEMNITOR.

Rev. Codes Mont. § 6486, creating a right of action for wrongful death, gives such action to the heirs or personal representatives of the person killed against the person causing the death, or if he be employed by another who is responsible for his conduct, then against such other, and section 5653 declares that an indemnitor against the act to be done is liable jointly with the indemnitee, and separately to every person injured by such act. *Held* that, since section 6486 imposes imputed liability for wrongful death only on employers, it excludes all liability of indemnitors except for actual, as distinguished from imputed, wrongdoing, and hence an original action was not maintainable by the personal representatives of a deceased servant against an employers' liability insurance company that had insured the master against liability for injuries to employés, for the servant's death alleged to have resulted from the master's negligence in failing to maintain a reasonably safe place for the servant to work in its mines.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 156.*]

At Law. Action by Myrtle Northam and another against the Casualty Company of America. On demurrer to complaint. Sustained, with leave to amend.

Maury & Templeman and J. O. Davies, for plaintiffs.
Kremer, Sanders & Kremer, for defendant.

DIETRICH, District Judge. While John Northam was employed by the Boston & Montana Consolidated Copper & Silver Mining Company, a Montana corporation, as an underground miner in a mine owned by it in the state of Montana, a large piece of rock, becoming dislodged, fell upon him, inflicting injuries from which he soon thereafter died. The plaintiffs are the heirs at law of the deceased, and are here claiming damages in the sum of $35,000 on account of his death, which they allege was due to the negligent failure of the mining company to maintain in a reasonably safe condition the place where the deceased was working. There is no charge that the conduct of the mining company was willful; nor has any judgment been recovered against it. The action is one at law, and the Casualty Company of America, alleged to be a corporation organized under the laws of the state of New York, and "doing business in the state of Montana, with resident agents therein," is the sole defendant. The only averments connecting the defendant with the injury complained of are as follows:

"(16) That before the commencement of this suit and before any of the acts herein set out were done by the Boston & Montana Consolidated Copper & Silver Mining Company, a corporation, the said defendant Casualty Company of America did, for a valuable consideration to it in hand paid by the said mining company, agree that it, the said Casualty Company of America, would hold harmless the said mining company from any and all loss and damages which it might sustain by reason of the acts of the said mining company herein set forth, and it, the said Casualty Company of America, did agree with it, the said mining company, that the said Casualty Company of America would indemnify the said mining company against any and all loss by reason of any and all such acts of the said mining company as are hereinbefore set out. Plaintiff alleges that this action at law is entirely between aliens on the one side, as plaintiffs, and a citizen of the United States on the other side, defendant."

---

By its amended demurrer the defendant interposes numerous objec-
tions to the complaint, but all that have any merit are involved in the
question whether or not, assuming that the plaintiffs state a cause of
action against the mining company, the action is, by reason of the
facts set forth in the above extract from the complaint, maintainable
against the defendant. While it does not appear where the contract
of indemnity referred to was executed or where it is to be performed,
both parties assume that it is subject to the provisions of section 5653
of the Revised Civil Code of Montana, and that the construction to
be given to that section is the most important, if not the controlling,
consideration. The section reads as follows:

"One who indemnifies another against an act to be done by the latter is lia-
ble jointly with the person indemnified, and separately to every person in-
jured by such act."

Primarily the question is whether the section is to be regarded only
as a declaration of the common law, or whether it announces a rule
of much broader import. Upon principle, prior to the enactment of
and without such statutes, an indemnitor was and is held to be a
tort-feasor jointly with the indemnitee, where, by reason of legal or
other relations the giving of the bond of indemnity implies a request
or demand from the former to the latter and a consideration, induc-
ing him to do the wrongful act for the injurious consequences of
which damages are claimed by a third party. Thus, one who is not
a party to the writ may treat the plaintiff in the action as a joint tort-
feasor with the sheriff, where his property is wrongfully seized in
attachment by the sheriff who, upon demand, has received from the
plaintiff an indemnifying bond as a condition of making the seizure.
Illustrative are the cases of Herring v. Hoppock, 15 N. Y. 409; Da-
vidson v. Dallas, 8 Cal. 227; Lewis v. Johns, 34 Cal. 629. The prin-
ciple running through these and all cases where the indemnitor is
held responsible is that, by his conduct, he has in a measure induced
the indemnitee to do the wrongful act, and has contributed to the
injury complained of.

It is contended on behalf of the defendant here that the phraseology
of the Montana Code section referred to had its origin in the proposed
(Field) New York Code of 1865, and that its author regarded it only
as a declaration of the common law; that later, with kindred sections,
it found its way into the California Code, and from that source it
was later adopted by the Legislature of Montana. Whatever may
be its relation to the "Field Code," it appears for the first time in
the statutory law of Montana in the codification of 1895, grouped with
other germane sections, under the title "Indemnity," constituting a
chapter substantially identical with a chapter under the same head,
appearing for the first time in the statutory law of California in
the Civil Code of 1872, where the section corresponding to the one
under consideration is numbered 2777. Both of these Codes (Cali-
fornia and Montana) were, it is thought, adopted, not for the purpose
merely of supplementing or modifying the common law, but as com-
plete legal systems. Moreover, both Codes (California § 5, and Mon-

tana § 4653, carried into the Revised Codes as section 6215) contain the following provision:

"The provisions of this Code, so far as they are substantially the same as existing statutes or the common law, must be construed as continuations thereof and not as new enactments."

The question, therefore, is whether the section under consideration is "substantially the same * * * as the common law"; plainly it is susceptible of various constructions. One view is that, in the phrase "act to be done," especial emphasis should be placed upon the word "act," thus making the section applicable only to injuries inflicted by the wrongful *acts* of the indemnitor as distinguished from those resulting from wrongful *omissions*. Another view is that the phrase implies only futurity, and that the word "act" is synonymous with "conduct," and embraces wrongs of omission as well as commission. Still another view is that the phrase "to be done by" implies upon the part of the indemnitee an agreement or obligation to do the act or make the omission constituting the tort, as if the phrase were "an act required (or demanded or requested) to be done by" the indemnitee; that is, the indemnitor gives a bond, in consideration of which the indemnitee agrees to or is induced to act or refrain from acting, to the injury of a third person. So understood, the section stands only as a declaration of the common law; and I am inclined to the view that such is the construction to be given to it.

Aside from any consideration of the intention of the framer of the proposed New York Code, we have here this situation: The Legislature of Montana, in legislating upon a subject touched by the common law, used language which may readily be understood as a definition only of a principle of the common law, and at the same time declared that if the provision is substantially the same as the common law, it must be taken as a continuation thereof. It is quite incredible that if the Legislature intended the most radical and sweeping innovation contended for by the plaintiffs, it would have so vaguely evinced such intention; and if we go farther and consider that for the expression of its intention the Legislature adopted the identical phraseology which, according to a more or less common understanding, was originally formulated as a declaration only of a rule of general law, the conclusion is almost irresistible that no material alteration of the common law was contemplated. As suggested by counsel for the plaintiffs, it is true that the intention of the framer of a statute is not controlling upon the courts; of itself, that has but little if any weight. Within the fair import of the language used, the fundamental inquiry always must be, What was the intention of the Legislature? and, where it is obscurely expressed, such intention may sometimes be illuminated by a reference to the origin of the precise phraseology of the statute and the meaning it was designed to convey, when presumptively or actually it appears that knowledge thereof was in the possession of the legislators at the time the statute was considered and adopted.

Having in view only that class to which this particular case belongs —suits for damages on account of death by wrongful act—there is

still another aspect of the question not without significance. It will be conceded that primarily the section under consideration does not confer upon the plaintiffs a right of action. At common law, generally speaking, there was no remedy in the nature of damages to surviving relatives for the death of one person, caused by the wrongful conduct of another. The section we are considering does not purport to provide such a remedy, and, in the absence of some other statutory provision therefor, this action could not be maintained by the plaintiffs. A right of action in such cases is conferred only by section 6486 of the Revised Codes of Montana, where it is provided that:

"When the death of one person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person."

Here we have a declaration that these plaintiffs may recover from "the person *causing* the death" of John Northam, and also from the "employer" of such person, if responsible for his conduct. No right of action is created against the indemnitor. It cannot be said that in enacting this section the Legislature was dealing alone with the responsibility of those who are actually and in fact guilty of wrongdoing; it was also dealing with imputed negligence. For the servant's wrongdoing the master is made responsible, although the latter may be entirely free from moral blame. To be sure, an indemnitor may be held liable, but not primarily or merely because he is an indemnitor. Wholly within the rule of the common law, a person may, by giving a bond of indemnity, in fact wrongfully contribute to the death of another, and therefore be held responsible as a "person *causing* the death." for which damages may be recovered. The point is that while the statute imposes responsibility upon all whose actual wrongdoing contributes to the death of another, whether they be employés or employers, indemnitees or indemnitors, responsibility for imputed wrongdoing is imposed upon but one class, namely, employers, and the rule of expressio unius est exclusio alterius, therefore, operates to exclude all liability of indemnitors except for actual, as distinguished from imputed, wrongdoing.

Plaintiffs cite but one case (that of Moore v. Los Angeles Steel & Iron Company [C. C.] 89 Fed. 73), wherein a statute similar to section 5653 of the Montana Revised Codes was considered. While it is true that the court there entertained the view that the statute greatly enlarged the common-law rule, it may be doubted whether the decision as a whole should be accepted as a precedent for a case like this. That, as I understand it, was a proceeding in equity, by which the injured persons sought to reach in the hands of the indemnitor the unpaid penalty provided for in the indemnity bond or policy of assurance. It was shown that no liability except the one in suit had arisen upon the bond. The indemnitee was insolvent, and plaintiffs sought "to recover of the insolvent debtor, the Los Angeles Iron & Steel Company, damages occasioned by its negligence, and also to enforce, in partial satisfaction for such damages, and therefore for his exclusive benefit,

the liability of the assurance corporation on said policy." By a course of reasoning, the court reached the conclusion that the statute "makes the policy of assurance inure directly to the benefit of the injured person," thus enabling him to sue the indemnitor upon the contract. Obviously this is a theory essentially different from and wholly inconsistent with that upon which this case is founded. The plaintiffs here are not, by garnishment or trustee process, endeavoring to reach an indebtedness due to the indemnitee; they do not limit their claims to the amount of the defendant's present liability upon the bond; they do not profess to sue upon a cause of action arising ex contractu. Their theory is that by virtue of the statute the defendant here is a tort-feasor, and that, as such, it may be sued directly at law, and that the recovery is limited not by the penalty of the bond, but only by the amount of the damages which the jury may find the plaintiffs have sustained. The suit is wholly upon a cause of action arising ex delicto, no cause of action arising ex contractu being involved. In that view, it is immaterial that the indemnitor may have limited its liability; for even if, under the terms of the bond, the mining company could, under no circumstances, recover from the defendant in excess of $5,000 on account of the death of John Northam and its liability resulting therefrom, these plaintiffs might recover from defendant the full sum of $35,000. The giving of the bond, it is urged, constitutes the defendant primarily a wrongdoer, and there being no contractual relation between it and the deceased or his heirs, the plaintiffs may recover from it as fully as they could recover from the mining company, were it a party defendant. I am unable to yield to that contention. As already intimated, in the absence of a construction by the Supreme Court of California, and especially of the Supreme Court of Montana, it is held that section 5653 of the Montana Revised Codes is to be accepted as a declaration only of the common law. As I understand the plaintiffs do not urge that if the statute be so interpreted, they have stated a cause of action against the defendant, and I shall therefore not consider the question whether, under a very liberal rule, the general language of the allegations in the complaint might be construed as charging defendant with actual wrongdoing.

The demurrer will be sustained, with leave to the plaintiffs to amend.