[Civ. No. 6953. First Appellate District, Division Two.—August 20, 1929.]

MARGERY SEVERNS, ·Appellant, v. CALIFORNIA HIGHWAY INDEMNITY EXCHANGE (an Association), Respondent.

Raymond D. Williamson and Raymond T. Donohue for Appellant.

B. P. Gibbs, Barry J. Colding, Theodore Hale and Carroll B. Crawford for Respondent.

LAMBERSON, J., *pro tem.*—Appeal by plaintiff, Margery Severns, from a judgment in favor of defendant after the trial court had granted a motion for nonsuit.

The action is one to recover damages for personal injuries, medical expenses and loss of wearing apparel sustained by plaintiff on May 31, 1925, in a collision between an automobile, operated as a so-called jitney bus, in which plaintiff and a woman friend were passengers for hire, and another automobile at the intersection of Fell and Franklin Streets, in the city of San Francisco. The operator of the jitney bus was Sam Euphrat, who was injured in the accident and died as a result of his injuries, on June 3, 1925.

It was alleged, and the evidence tended to show, that the accident was the result of negligence on the part of Euphrat.

The complaint, which was filed December 7, 1925, alleges that Euphrat was a duly licensed driver, and had complied with the provisions of Ordinance No. 3212, New Series, of the city and county of San Francisco, approved April 29, 1915, section 4 of which reads, in part, as follows:

"In order to insure the safety of the public, it shall be unlawful for any person to drive or operate such 'jitney

bus' or to obtain a permit therefor unless he shall have given and there is in full force and effect at all times while such person is driving and operating such 'jitney bus' on file with the Police Commission, either (a) a bond of the owner or lessee of said 'jitney bus' with a responsible surety company or association authorized to do business under the laws of the State of California, in the sum of ten thousand (10,000) dollars, conditioned that the owner or lessee of said 'jitney bus' for which a permit has been applied (giving its manufacturer's name and number and state license number) will pay all loss or damage that may result to any person or property from the negligent operation of or defective construction of said 'jitney bus,' or which may arise or result from any violation of any of the provisions of this Ordinance or the laws of the State of California. The recovery upon said bond shall be limited to five thousand (5,000) dollars for the injury or death of one (1) person and to the extent of ten thousand (10,000) dollars for the death or injury of two (2) or more persons in the same accident and to the extent of one thousand (1,000) dollars for the injury or destruction of property. Such bond shall be given to the City and County of San Francisco and shall inure to the benefit of any and all persons suffering loss or damage either to person or property as herein provided, and suit may be brought in any court of competent jurisdiction upon said bond by any person or persons or corporation suffering any loss or damage as herein provided. Such bond shall be approved by the Police Commission, and· the permission granted by said Police Commission as herein provided shall recite that the permit is issued upon condition and in consideration of the filing of said bond. Said bond shall be a continuing liability notwithstanding any recovery thereon, and if at any time, in the judgment of the Police Commission, said bond is not sufficient for any cause, the Commission may require the party to whom permit is issued as herein provided to replace said bond with another bond satisfactory to the Commission, and in default thereof said permit may be revoked; or (b) a policy of insurance in a company authorized to do business in the State of California, insuring said owner or lessee of said 'jitney bus' against loss ·by reason of damage that may result to any person or persons or

property from the operation of said 'jitney bus' said policy of insurance to be in limits of five thousand (5,000) dollars for any one (1) person injured or killed; and, subject to such limit for each person, a total liability of ten thousand (10,000) dollars in case any one (1) accident resulting in bodily injury or death to more than one (1) person. Said policy of insurance must also provide insurance to the extent of one thousand (1,000) dollars for the injury to or destruction of any property of third parties.

"Said policy shall guarantee payment of any final judgment rendered against the said owner or lessee of said 'jitney bus' within the limits herein provided, irrespective of the financial responsibility or any act of omission of said 'jitney bus' owner or lessee."

Euphrat had deposited with the police commission of San Francisco, and there was in effect on the day of the accident, an instrument purporting to be a policy of insurance, executed by the defendant, California Highway Indemnity Exchange. Those portions which are important and material in the consideration of the case read as follows:

"Subscribers at California Highway Indemnity Exchange
"(Herein called Exchange)

"Do hereby agree to indemnify the subscriber named herein: In consideration of the stipulations enumerated in the schedule of warranties attached hereto Subscribers at California Highway Indemnity Exchange do hereby severally agree to indemnify the subscriber named herein against the hazards covered by the Special Agreements:
"Filed—Police Commission
"S. F. jit—Rent End Att.                    San Francisco
"Special Agreements

"Injuries to persons:

"(a) Against loss from Common Law or Statutory Liability for damage on account of bodily injuries, fatal or non-fatal, accidentally suffered (or alleged to have been suffered) while this contract is in force, by any person or persons not in the employ of the subscriber resulting directly from the ownership, use or maintenance of any automobile described in the schedule herein contained. This contract shall cover such injuries so sustained wherever any automobile covered hereby may be in the service of the subscriber. The Exchange's liability is limited to five thou-

sand dollars ($5,000.00) for injuries to or death of any person, and, subject to the same limit for each person, the Exchange's total liability for injury to or death of more than one person in any one accident is limited to ten thousand dollars ($10,000.00). And in addition to said limited sums, the Exchange will pay the expense of litigation, and all costs taxed against the subscriber in any legal proceedings defended by the Exchange, together with any interest accruing after entry of judgment upon such part of said judgment as shall not be in excess of the limits of the Exchange's liability herein expressed.

"(b) The subscriber may provide such immediate surgical relief as is imperative at the time of the accident, and the Exchange will reimburse him the amount expended upon receipt of proper voucher therefor.

"(c) Against loss from common law or statutory liability for damages on account of another (property of the subscriber or in charge of the subscriber or any of his employees, or carried in or upon said automobile, not being covered by this clause) resulting directly from the ownership, use or maintenance of any automobile described in the schedule hereinafter contained. The liability of the Exchange for loss or damage in this clause is limited to not more than one thousand dollars ($1,000.00) for any one accident.

"(g) The foregoing Special Agreements are made subject to the General Agreements, which shall be construed as conditions. . . .

"It is hereby understood and agreed that in the event a final judgment covering any loss or claim under this policy is rendered against the subscriber, the Exchange guarantees the payment of said judgment direct to the plaintiff securing such judgment, irrespective of any financial responsibility on the part of the subscriber, provided that any action by the said plaintiff to recover under this clause is commenced within twelve months next after such final judgment shall have been rendered; or where such limitation of time is prohibited by the laws of the State wherein this Policy is issued, then and in that event no suit or action shall be sustainable unless commenced within the shortest limitation permitted under the laws of such state. The Exchange does not prejudice by this condition any defense against

such loss or claim that it may be entitled to make under this policy in so far as it relates to any action brought against the Exchange by the subscriber.''

It is contended by plaintiff that her action lies directly against the defendant insurance exchange, because she is one of the class of persons for whose benefit the policy was issued by reason of the provisions of the ordinance under which it was executed and received by the police commission; in other words, that she has an independent cause of action against the defendant on an instrument issued pursuant to the intent of the so-called jitney bus ordinance.

█ A cause of action for personal injuries, in the absence of a statute expressly providing to the contrary, abates upon the death of either the person injured or the tort-feasor. (*De La Torre* v. *Johnson*, 200 Cal. 754 [254 Pac. 1105]; *Clark* v. *Goodwin*, 170 Cal. 527 [L. R. A. 1916A, 1142, 150 Pac. 357].)

The right, if any, of the plaintiff to have a direct action against the defendant is dependent, therefore, not upon any statutory provision, but upon the intent disclosed by the ordinance and the terms of the policy or the contract which the defendant executed.

A number of cases have been before the appellate courts of California in which the San Francisco jitney bus ordinance, or ordinances of similar nature in other cities, have been under consideration. The San Francisco ordinance was first reviewed in the case of *In re Cardinal*, 170 Cal. 519 [L. R. A. 1915F, 850, 150 Pac. 348], in which case the Supreme Court specifically mentioned the fact that the ordinance provides, first, for a bond conditioned that the surety company will pay all loss or damage resulting from the negligent operation of a jitney bus, or, second, for a policy of insurance, insuring the owner of the bus against loss, which policy shall guarantee payment within the limits prescribed of any judgment rendered against the owner.

In the case of *Milliron* v. *Dittman*, 180 Cal. 443 [181 Pac. 779, 780], the court had under consideration an ordinance of the city of Los Angeles which provided that a bond to be given by a jitney bus driver should be conditioned that said bond should inure to and be for the benefit and protection of anyone who should sustain any damage or injury, which is the substance of the provisions of subdivision (a)

of section 4 of the San Francisco ordinance. The court said:

"It is true, as the appellants contend, that the general rule is to the effect that the liability of sureties cannot be extended beyond the fair import of the express undertaking in the bond. There is, however, an exception to this general rule in the case of bonds given in pursuance of a governmental law for a public purpose. The exception is clearly and concisely stated in the case of *State*. v. *Nutter*, 44 W. Va. 385 [30 S. E. 67], where it is said: 'The law in force at the date of a public bond, fixing a certain condition for it, saying what its obligations shall be, is a part of it as effectually as if such obligations were in words inserted in it. . . . By signing, the parties adopt the law as a part of the bond. If we do not so hold, we frustrate the plain purpose of the statute.' . . .

"Of course this exception to the general rule would have no application where its undoubted effect would be to impose a liability necessarily and absolutely inconsistent with the unequivocal intent of the parties as disclosed by the express terms of the bond itself. (*Graeter* v. *De Wolf*, 112 Ind. 1 [13 N. E. 111].) There is no provision, however, in the bond in question which expressly excludes a direct right of recourse by the injured party against the bonding company. Moreover, the bond as it read at the date of the accident was a contract made not only for the protection of the operator of the motor bus, but also directly for the benefit of injured passengers, in so far as it expressly promised to pay directly to an injured party any amount for which the operator of the bus might be adjudged liable.

"To read the statutory requirement into the bond, while it accords to the plaintiff the privilege of joining the Casualty Company in a suit against the operator of the bus, introduces no necessary inconsistency into the contract and leaves the substantial rights of the parties unimpaired."

In other cases, such as *Malachowski* v. *Varro*, 76 Cal. App. 207 [244 Pac. 936] (in which the Los Angeles ordinance was under consideration); *Gugliemetti* v. *Graham*, 50 Cal. App. 268 [195 Pac. 64] (a bond providing that it should inure to the benefit of anyone injured by reason of the negligence of the assured), and *Fraher* v. *Eisenmann*, 94 Cal. App. 48 [270 Pac. 704] (interpretation of the San

Francisco ordinance), it was held that the defendant insurance carrier was properly joined in an action against the assured, if the policy or the ordinance provided that it should inure to the benefit ·of the public, but we find no case in California in which the question whether the insurance carrier can be held responsible after the death of the assured, and before any action has been begun or any judgment has been secured against him, has been decided.

It should be noted that the San Francisco ordinance provides specifically for two distinct forms of protection: First, under subdivision (a) of section 4 for a bond conditioned as stated in the ordinance which has been heretofore quoted; and, second, for a policy of insurance containing the conditions set forth in said ordinance.

There is no provision in section (b) that the policy issued thereunder shall inure to the benefit of the public, such as appears in subdivision (a), and the policy itself contains no provision of that kind.

In the case of *Kruger* v. *California Highway Indemnity Exchange,* 201 Cal. 672 [258 Pac. 602, 604], the Supreme Court, interpreting the same ordinance and a similar policy, said: ''The undertaking is to pay the judgment to the party injured, and not the damages sustained nor the loss incurred as a result of the injury.''

In the Kruger case, as well as in the case of *Milliron* v. *Dittman, supra,* the court made the comment that the defendant must be presumed to have taken into consideration the extent of the liability incurred by it in issuing the policy, and in fixing the cost of the premium, which should be charged therefor.

Considerable stress has been laid upon the use in section 4 of the San Francisco ordinance of the introductory words ''in order to insure the safety of the public.'' The expression is not apt, as the real purpose of the ordinance is to compel the giving of a better or more substantial security to the public that claims for damages against more or less irresponsible operators of motor vehicles for hire, will be paid.

■ ■ It is plain that a municipality has the right within reasonable limits to prescribe the nature of a security to be given by those operating vehicles for hire upon its public streets, and there is nothing unreasonable in the

provision of an ordinance requiring the operator of such a vehicle to protect the public by the bond or policy of insurance required therein and in the manner provided. (*Kruger* v. *California Highway Indemnity Exchange, supra.*)

In the case of *Woodhead Lumber Co.* v. *E. G. Niemann Investments, Inc.*, 99 Cal. App. 456 [278 Pac. 913], the court held that the question of whether a contract is intended for the benefit of a third person, is one of construction, and the intent must be gathered from reading the contract as a whole, in the light of circumstances under which it was entered into.

■ It is clear that the board of supervisors of the city and county of San Francisco intended to permit the execution of one or the other of two instruments, one of which was in the form of a bond expressly inuring to the benefit of all those persons who might be injured by the operation of a motor vehicle covered by the bond, and the other being an insurance policy guaranteeing the payment of any final judgment which should be recovered against the assured.

If the driver of the automobile in which the plaintiff was injured had survived the accident it could not be contended that the plaintiff could have proceeded directly against the defendant without having first secured a final judgment against the assured, although it has been suggested that the assured and the defendant might have been proceeded against in the same action. (*Kruger* v. *California Highway Indemnity Exchange, supra.*) We do not think it can be conceded that the plaintiff would now have any greater rights against the defendant than she possessed prior to the death of the assured.

Reading section number four of the ordinance, we do not think that the legislative intent was to create a primary liability against the insurance carrier. The use of the words ''final judgment'' in subdivision (b) of section four appear in themselves to negative such intention, and the language of the insurance policy does not indicate an intention on the part of the insurance company to extend its obligations beyond the terms of the ordinance, but expresses, on the other hand, an intention that the liability of the carrier should not attach until the final judgment had been obtained.

■ It is contended by plaintiff that section 2777 of the Civil Code gives her the right to maintain her action directly against the defendant. That section provides that one who indemnifies another against an act to be done by the latter is liable jointly with the person indemnified, and separately, to every person injured by such act.

The case of *Moore* v. *Los Angeles Iron & Steel Co.*, 89 Fed. 73, is cited in support of such contention, but that case, so far as its interpretation of section 2777 is concerned, has been superseded by *Northam* v. *Federal Casualty Co. of America*, 177 Fed. 981, in which it was held that said section is to be regarded as a declaration of the common law, and that it announces a rule of no greater import; that it applies, in other words, to joint tort-feasors, or where the liability of the indemnitor and indemnitee is joint and concurrent.

In the case of *Treloar* v. *Keil & Hannon*, 36 Cal. App. 159, at pages 168 and 169 [171 Pac. 823, 826], the court referred to the case of *Northam* v. *Federal Casualty Co. of America*, *supra*, and section 2777 of the Civil Code and said as to that section:

"We may say that it would not be competent for the legislature to modify, defeat, or nullify a contract of the parties by creating a liability that was not contemplated or provided in their contract, and, in the second place, it is entirely obvious by the provisions of the succeeding section 2778 that the legislature did not intend to change the liability of the indemnitor in such policy as the one herein involved.

"For therein it is provided: '2. Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof.'

"It may be stated finally that the encylopedias and text-books approve the doctrine which we have herein announced.

"Applying the familiar rules of interpretation we can reach no other conclusion than that the surety company is not liable for his claim. To hold that the surety company bound itself to defend successfully any suit that might be brought against the indemnitee and to assume any liability of the latter, and, therefore, satisfy any judgment that might be obtained against the employer in such case and

under the circumstances herein appearing, would be doing violence to the language of the contract adopted by the parties themselves and supplying an additional covenant not to be found in the policy.''

While other jurisdictions do not, in most instances, recognize the right of a third person to join the assured and the insurance carrier as defendants in the same action, upon the theory that actions *ex contractu* cannot be joined with actions *ex delicto,* cases in such jurisdictions are persuasive as supporting the principle which we think should control in this case.

In the case of *Criss* v. *United States Fidelity & Guaranty Co.,* 105 W. Va. 380 [142 S. E. 849, 850], the Supreme Court of Appeals of West Virginia held that under a liability insurance contract, issued in compliance with a certain statute which forbade the road commission of the state to issue a permit to a taxi driver until he should file a bond or ''liability insurance satisfactory to the commission, and in such sum as the commission may deem necessary to adequately protect the . . . public,'' and in which case the policy issued provided that its obligations and promises should inure to the benefit and protection of any person sustaining bodily injuries, and that such obligations constitute direct liability to such persons whether an action for damages should be brought against the named assured alone, or jointly with the company, a person claiming to have been injured could not proceed against the insurer alone until such claim had been liquidated. After stating that the legislature had created a new right but did not provide a new remedy, the court said:

''The phrase upon which she relies is a promise upon a promise. It is a promise, to any person who might be injured by the automobile of the assured, that the insurer's promise to the assured in such contingency shall inure to the benefit of the injured person. The promise to the assured is to indemnify him for his actual loss in such case. (Ann. Cas. 1913D, note, p. 1152.) That promise requires performance only when such loss is determined. That determination depends upon the recovery of a final judgment against the assured, or upon an agreement to which the insurer is a party. The policy so states. The fulfillment of that promise cannot be exacted upon the mere occur-

rence of an injury; the mere institution of an action against either the assured or the assured and the insurer jointly does not make either one directly liable to the injured person. Such person himself might be at fault. The direct liability of the insurer commences only when established. It is established only by the final judgment or by the agreement above referred to. Consequently, in plain language, the rider simply obligates the insurer to pay directly to the injured person the amount he is entitled to recover from the assured, either by judgment or by agreement, instead of indemnifying the insured in that amount. The "inurement to the benefit and protection' and the 'direct liability' requirements of the rider are fully met by such payment.

"The plaintiff here has obtained neither judgment against the assured nor an agreement of liability from the assured and the insurer. Therefore a direct liability to her from the insurer has not been established, and she cannot predicate her right of action against the insurer on that ground. See *Smith Stage Co.* v. *Eckert,* 21 Ariz. 28 [7 A. L. R. 995, 184 Pac. 1001, 1003], a leading case."

In the case just cited the assured died about nine months after the date of the injury, and the court commented upon the fact that under the common law plaintiff's right of action against the assured perished at his death.

In the case of *Smith Stage Co.* v. *Eckert, supra,* the court had under consideration an action by a passenger against a stage company and its insurance carrier upon an indemnity policy covering loss by reason of judgments against the stage company for injuries to passengers, and which policy contained a clause inserted by order of the corporation commission providing that the policy was to inure to the benefit of any and all persons suffering loss or damage, and that suit might be brought thereon in any court having jurisdiction. The policy provided further, as follows: "If final judgment is rendered against the assured by reason of any loss or claim covered by this policy, the company shall pay said judgment up to the limits expressed in the policy, direct to the plaintiff securing said judgment."

The court held that such provisions did not make it unnecessary for the person injured to first obtain judgment against the stage company before he could recover against

the indemnity company on the policy, and the court said: "After much thought and investigation, we have concluded that the indemnity company's contract is not one of insurance, but one of conditional liability; the condition being that the injured person must first obtain a judgment against the assured stage company before he has any remedy against the indemnity company on the policy."

In the case of *New York Indemnity Co.* v. *Ewen*, 221 Ky. 114 [298 S. W. 182], it was held that a passenger injured by the negligent driving of an automobile by the holder of a policy indemnifying against loss from liability imposed by law on account of the maintenance of the automobile, may not join in this action the assured and insurer, notwithstanding the provision of the policy that the assured's insolvency should entitle the claimant to maintain an action against the insurer, and notwithstanding the allegations and proof of the assured's insolvency, it being the opinion of the court that the indemnity provided for in the insurance policy was against loss from liability, meaning a real loss and one which must be put into a judgment against the assured before recovery could be had against the insurance carrier.

From the foregoing we conclude that the insurance policy in question in this case was simply an undertaking to pay any final judgment which the injured person might obtain in a court of competent jurisdiction against the assured, and not the damages sustained nor the loss incurred as a result of the injuries, and that the obtaining of such judgment constituted a condition precedent to any action which the injured person might have against the insurance carrier.

We are of the opinion that the motion for nonsuit was properly granted and the judgment should be affirmed. It is so ordered.

Nourse, Acting P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 19, 1929.