[Civ. No. 9006. First Appellate District, Division Two.—September 27, 1933.]

ADELIA F. WIGGINS, Plaintiff and Respondent, v. PACIFIC INDEMNITY COMPANY (a Corporation), Appellant; ADELIA F. WIGGINS et al., Cross-Defendants and Respondents.

Lawler & Degnan, George L. Greer, Lobdell & Watt, Robert M. Pease and Roy P. Dolley for Appellant.

James H. Sims, Bailie, Turner & Lake, Richard A. Turner, Allen T. Lynch, Mathes & Sheppard, Robert A. Cushman, Joseph G. DeForest and Sherer & Daugherty, as *Amici Curiae* on Behalf of Appellant.

Maynard J. Givens, Scarborough & Bowen and Melvin J. Keane for Respondents.

NOURSE, P. J.—The plaintiff Wiggins commenced an action against the Pacific Indemnity Company and others to recover the sum of $2,150 with interest for moneys paid to the Homeway Realty Company, a copartnership composed of Weygint and Gillette. The surety company at the time of answering the complaint filed a cross-complaint against plaintiff Wiggins and cross-defendants named herein in which it was alleged that the surety company had executed and delivered to the Homeway Realty Company two bonds in the principal sum of $2,000 each in compliance with the terms of the California Real Estate Act (Stats. 1923, p. 93), and that as such surety it had theretofore paid to one Keers the sum of $1811.47 pursuant to a final judgment predicated on the bond issued to Gillette; that it had theretofore paid to one Kelsey the sum of $937.13 predicated on the bond issued to Weygint. It was further alleged that at the time of the filing of the cross-complaint an action was pending in the municipal court of the city of Los Angeles brought by the cross-defendants Herman and Emmi Bollmann against the Homeway Realty Company and the Pacific Indemnity Company to recover the sum of $1353.02 upon both of said bonds, and that at the same time there was pending in said municipal court an action brought by the cross-defendant Benn against the same parties to recover the sum of $250

based on the bond issued to Weygint. The cross-defendant Cunningham was brought in on allegations that she asserted a claim against the realty company and its surety, and the cross-complainants prayed that all these cross-defendants be required to litigate their respective claims in the one action. This was done and as a result of the trial judgment was awarded in favor of the various cross-defendants as follows: Wiggins, $2,150; Benn, $250; Bollmann, $1264.50; Cunningham, $1635.31. Each cross-defendant was awarded interest in addition to these amounts running from the date of the fraudulent transaction complained of. The total principal of the four judgments was $5,299.81; interest, $1,033.32, making a total principal and interest of $6,333.13. The Keers and Kelsey judgments were admitted to have been paid in the sum of $2,748.60, without the surety's knowledge of the existence of any other claims. The total charge upon the surety through all of these judgments was in excess of $9,000.

From the judgment as entered the surety company has appealed, assigning four grounds for reversal. First, that it cannot be held for more than the penalty designated in the bond; second, that the surety company was entitled to have credit for the payment theretofore made in compliance with the final judgment based upon the bonds in suit; third, that recovery of either bond must be confined to the copartner whose acts are complained of; and fourth, that interest should not have been allowed prior to the date of the judgment.

The first question rests on an interpretation of the provisions of section 9a of the California Real Estate Act (Stats. 1923, p. 96). This section requires all applicants for a broker's license to file a bond payable to the people of the state of California in the amount of $2,000 conditioned for the faithful performance by such broker of any undertaking as a licensed real estate broker under the act. The provisions of the section which forced this controversy read, "Any person injured by the failure of a real estate broker to perform his duties, or comply with the provisions of this act, shall have the right in his own name to commence such an action against said real estate broker and his sureties for the recovery of any damage sustained by the failure or

omission of said real estate broker to perform his duties or either of them, or to comply with the provisions of this act or any of them. It shall be the duty of the real estate commissioner to see that such bond remains and is kept good.'' The bonds which were deposited by the brokers in this case were identical in form and obligated the surety in the penal sum of $2,000 for the faithful performance of the broker's duties under the act and provided that *any person injured* by the failure of such real estate broker to perform such duties shall have the right to maintain an action against the broker and surety for the recovery of *any damage sustained* by the failure or omission of such broker.

The judicial construction of the portion of the statute referred to is to be governed by two well-settled rules of law. First, that the construction must be reasonable and in accord with the legislative intent, and second, that if two constructions are possible, one of which would render the statute constitutional, the other unconstitutional, that construction which would make a constitutional statute must be followed.

In this connection we may refer to similar and contemporaneous legislation in order to determine the meaning of the legislature. With this in mind, we find the general rule relating to the liability of a surety stated in section 2836 of the Civil Code as follows: ''A surety cannot be held beyond the express terms of his contract, and if such contract prescribes a penalty for its breach, he cannot in any case be liable for more than the penalty.'' This principle is recognized in all our decisions. (See *County of Glenn* v. *Jones* 146 Cal. 518 [80 Pac. 695]; *W. P. Fuller & Co.* v. *Alturas School Dist.*, 28 Cal. App. 609, 612 [153 Pac. 743]; *Ryan* v. *Shannahan*, 209 Cal. 98, 101, 102 [285 Pac. 1045].)

This principle has been applied to other bonds required to be given for the faithful performance of some obligation of a third party. Thus section 1183 of the Code of Civil Procedure requires a bond in an amount not less than fifty per cent of the contract price ''conditioned for the payment in full of the claims of all persons performing labor upon or furnishing materials to be used in . . . '' any work coming under the Mechanic's Lien Law. Section 962 of the Political Code authorizes suit upon a public official's bond

"from time to time, and judgment recovered thereon by the state of California, or by any person to whom a right of action has accrued against such officer and his sureties, until the whole penalty of the bond is exhausted". Section 554 of the Probate Code, relating to an administrator's bond, provides that, "The bond shall not be void upon the first recovery, but may be sued and recovered upon from time to time, by any person aggrieved, in his own name, until the whole penalty is exhausted."

Subdivision 3 of section 5 of the Corporate Securities Act, as amended in 1925 (Stats. 1925, p. 967), after providing for a bond "payable to the people of the state", reads: "Any person who sustains an injury covered by such bond, may in addition to any other remedy he may have, bring an action in his own name upon said bond for the recovery of any damages sustained by him." Section 5 of the Produce Dealer's Act (Stats. 1927, p. 1814) authorizes: "Any consignor of farm products claiming to be injured . . . may bring an action upon said bond against both principal and surety . . . to recover the damages caused by such fraud." In the act relating to private detectives (Stats. 1927, p. 1943, sec. 4), "Every person injured . . . may bring an action on said bond in his own name to recover damages suffered. . . . "

In reference to the provisions of section 1183 of the Code of Civil Procedure, the Supreme Court, in *Roystone Co.* v. *Darling*, 171 Cal. 526, 543 [154 Pac. 15, 22], had occasion to consider a question closely akin to that presented here. In that proceeding claims arising under a building contract far exceeded the penalty specified in the bond, but the claimant therein argued that because the statute required a bond conditioned for the payment in full of the claims of all persons, such claimants were not limited to the penalty named in the bond. The Supreme ·Court referred to the code section which fixed the penalty of the bond at not less than one-half the amount of the contract price. This, the court said, measured the obligation and the liability of the surety. "The subsequent statement", said the court, "that after applying to the payment of liens the sum due from the owner to the contractor, such claimants may, in a suit on the bond, recover the unpaid balance of their claims, cannot be construed to authorize a recovery on the bond

of more than the penal sum thereof. . . . The statement that the bond must be 'conditioned for the payment in full of the claims' of lienholders is the usual phraseology of the obligation of a bond at common law. This is not understood to create an obligation in excess of the penal sum named, but only an obligation to pay such claims in full, provided they do not exceed the penal sum." Similarly in *Roberts* v. *Security Trust & Savings Bank,* 196 Cal. 557 [238 Pac. 673], a case involving a bond given under the same code section, the Supreme Court, approving the rule of *Roystone Co.* v. *Darling, supra,* said, page 574 [of 196 Cal.] : "The bond given by appellant to secure the payment for labor and materials is conditioned that the contractor shall pay, or cause to be paid, all claims against him for such labor or materials, and is expressly made to inure to the benefit of any and all persons who perform labor upon or furnish materials to be used in the work described in the contract between Roberts and Mrs. Spires, or any modification thereof. By section 1183 of the Code of Civil Procedure, and by the express stipulation in the bond, such persons are given a right of action to recover upon the bond against the contractor and his surety, *or either of them,* in any suit brought to foreclose liens which may be filed by such persons upon the property of the owner, or in a separate suit brought upon the bond. The claimants may recover in such action, or actions, the value of such labor done or materials furnished, not exceeding, however, in the aggregate the amount of the bond, which in this case was one-half of the contract price for the erection of the building. The obligation of the appellant is, therefore, to pay the lienholders in full, provided their claims do not exceed the penal sum of the bond, $95,000. (*Roystone Co.* v. *Darling,* 171 Cal. 526, 543 [154 Pac. 15].)"

We have here decisions construing the language of a statute of a similar nature and the legislature must be presumed to have had these decisions in mind when the real estate act was passed. Hence, when the legislature in the later act provided that "any person injured" might sue on the bond for the recovery "of any damage sustained", the legislature must be presumed to have intended that the aggregate of all recoveries under one bond should not exceed the penalty named in the bond because the courts in construing similar language in the Mechanic's Lien Law had

definitely ruled that such was the legislative intent. This intention is emphasized by reference to the other statutes herein noted. Some of these were enacted before, some after the Real Estate Act; but all recognize the general principle of surety liability defined in section 2836 of the Civil Code.

In support of the judgment the respondent relies on *Salo* v. *Pacific Coast Casualty Co.*, 95 Wash. 109 [163 Pac. 384, L. R. A. 1917D, 613], and *Commercial State Bank* v. *Palmerton*, 152 Wash. 89 [277 Pac. 389]. The Salo opinion was a five to four decision of the Supreme Court of Washington. It involved a surety bond given under a statute relating to the operation of jitney busses. The majority of the court held that when the statute authorized "every person" to sue the principal and surety on the bond the liability of the surety was not limited to the penal sum stipulated in the bond and called for by the statute. The majority opinion was not supported by and has not been approved in any other authority. The dissenting justices rested their dissent on the well-accepted general rule that the penalty named in the bond was the limit of the surety's liability. The decision in the Commercial Street Bank case involved a bond given under the Warehouseman's Act. The Supreme Court of Washington reached the same conclusion as to the surety's liability, basing its decision solely upon the ground that the question had been determined in the Salo case. Following these decisions the Supreme Court of the state of Iowa in *Witter* v. *Massachusetts Bonding & Insurance Co.*, (Iowa) 247 N. W. 831, gave a full consideration of the rule announced in the Salo case and declined to follow it. The Iowa court, after citing numerous authorities from other jurisdictions adhering to the general rule, said: "Thus it appears that by the great weight of authority, a surety company cannot be held liable for a greater amount than that specified in the bond, and that one recovery of the full amount constitutes a defense against all pending or future suits, even though such suits are based on distinct wrongful acts of the party giving the bond."

We agree with the interpretation given by the Iowa court and conclude that our statute must be given a like interpretation for two reasons. First, that this is the only sound and reasonable construction to be given the statute,

and second, that any other construction would render the act unconstitutional. This construction is sound and reasonable because the surety company is entitled to know the extent of its liability before it enters into the contract of surety. It is entitled to know this in order to fix the premium to be charged to its principal on the bond and also in order that it might comply with the provisions of section 625b of the Political Code limiting the undertaking on any bond to ten per cent of the capital and surplus of the surety company. It will be noted that the Real Estate Act does not require a bond from a corporate surety or prohibit a bond executed by an individual or personal surety. But under the provisions of section 1057 of the Code of Civil Procedure a personal surety may justify by showing that he is worth "the sum specified in the undertaking or bond". Hence, if respondent's construction of the Real Estate Act is to be followed, it would be impossible for a personal surety to justify upon any bond required by that act.

We are not impressed with the academic discussion of the purely grammatical construction of this portion of the Real Estate Act. To the average mind, either lay or legislative, there is no marked difference between a right given to "any person" and one given to "all persons", or between the right to recover "any damage sustained" and the right to recover "payment in full". Thus there is no real or substantial difference between the language used in the Real Estate Act and that used in the Mechanic's Lien Law. Similarly section 961 of the Political Code (as it read when the Real Estate Act was passed) provided that all official bonds shall be obligatory "to and for the use and benefit of *all persons* who may be injured" and that "*any person* so injured" may sue on such bonds. Upon principle and reason we are compelled to the conclusion that the legislature, having in mind the judicial construction of the mechanic's lien and official bonds, did not intend to increase the liability of a surety in the Real Estate Act beyond the penalty named. To our minds the real purpose which the legislature intended to express in section 9a of the act was that the bond should inure to the benefit of all persons injured by the acts of the principal and that any such person might sue the surety directly—thus distinguishing the rights under such bonds from those under the common-law rule where the right to

sue was limited to the obligee named in the bond, and from those bonds or contracts of insurance which postponed the right to sue until final judgment was had against the principal. (See, generally, *Sunter* v. *Fraser*, 194 Cal. 337, 340 [228 Pac. 660]; *Milliron* v. *Ditman*, 180 Cal. 443 [181 Pac. 779]; *Fraher* v. *Eisenmann*, 94 Cal. App. 48, 51 [270 Pac. 704]; *Severns* v. *California Highway Indem. Exch.*, 100 Cal. App. 384, 390 [280 Pac. 213].)

█ Furthermore, this construction of the act is necessary because, if the legislature intended to place a continuing liability on the surety beyond the penal sum specified in the act, then the act, to that extent would be unreasonable and void. The vocation of a real estate broker is a legitimate and useful one which cannot be taken away under the guise of regulation. (*Riley* v. *Chambers*, 181 Cal. 589, 592 [185 Pac. 855, 8 A. L. R. 418].) Regulations of such occupations which are arbitrary, discriminatory and unreasonable are beyond the scope of legislation. (*In re Carlson*, 87 Cal. App. 584, 587 [262 Pac. 792]; *In re Weisberg*, 215 Cal. 624, 632 [12 Pac. (2d) 446].) If the act means that while the required bond purports to be in the penal sum of $2,000, "yet after recovery of that amount the obligors shall continue to be liable for other and additional amounts without limit, then the requirement is clearly unreasonable. No surety could properly be asked to undertake such an indefinite and unlimited responsibility." (*Jitney Bus Assn.* v. *Wilkes-Barre*, 256 Pa. 462 [100 Atl. 954]; *Stephenson* v. *Dillon*, 82 Fla. 276 [89 So. 558, 22 A. L. R. 227]; *People* v. *Kastings*, 307 Ill. 92 [138 N. E. 269].)

It is true, as is said in the Bus Association case, that, if the statute imposes a continuing and unlimited liability "no surety could properly be asked to undertake" it because there would be no possible method of determining the extent of its undertaking. And no personal surety could undertake the obligation because it would be impossible for him to justify under our code when the extent of his obligation is unknown. The effect of the interpretation urged by respondents would be that no real estate broker could secure a bond within the terms of the act and hence the occupation would be prohibited rather than regulated. As such construction of the statute would render it unconstitutional,

the other construction, which is also a sound and reasonable one, must be adopted. (5 Cal. Jur., pp. 615, 616.)

■ We find no error in the ruling of the trial court that the plaintiff and cross-defendants were entitled to recover upon both bonds. Weygint and Gillette were copartners doing business under the name of Homeway Realty Company. The statute requires each copartner to file a bond and two bonds were accordingly filed here, both naming Homeway Realty Company as principal and both conditional upon the compliance of the *copartnership* with the terms of the act. The wrongful act of one partner in the conduct of partnership business is chargeable to the partnership and to the other partners. (Civ. Code, secs. 2407–2409.)

Appellant complains of the allowance of interest running prior to the date of the separate judgments. The point is answered in *Austin* v. *American Surety Co.,* 118 Cal. App. 68, 72 [4 Pac. (2d) 577]. In each of the judgments the claimants recovered the exact amount sued for, which in each case was alleged to represent a definite amount paid to the brokers for a specific purpose. There was at no time any controversy over any of the amounts claimed to be due. The principal was thus liable for the proceeds and was liable for interest from the date of the misappropriation. The liability of the surety for interest in a case of this character is of course the same as that of the principal.

■ The judgment as to the surety company is reversed, with directions to apportion among the cross-defendants the balance remaining on both bonds after deducting the two judgments heretofore paid and to enter judgment against the surety for the respective amounts so ascertained with interest thereon from the date of the defalcation in each instance.

Spence, J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 27, 1933, and the following opinion then rendered therein:

THE COURT.—The last two paragraphs of the opinion herein are stricken out and the following is inserted in lieu thereof:

The trial court awarded each plaintiff interest running from the date each plaintiff paid money to the broker. Throughout the hearing on appeal the appellant contended that interest should not commence to run until judgment because the claims were for unliquidated damages. To this respondent answered that in each judgment the claimant recovered the exact amount sued for, which in each case was alleged to represent a definite amount paid to the brokers for a specific purpose; that there was at no time any controversy over any of the amounts claimed to be due. *Austin* v. *American Surety Co.*, 118 Cal. App. 68, 72 [4 Pac. (2d) 577], was cited by respondents. It is directly in point on the questions presented and argued on the appeal.

In its petition for a rehearing the appellant states that in the Austin case the judgment was in a sum less than the full penalty of the bond, whereas, here the full penalty is decreed. *Democa* v. *Barasch*, 212 Cal. 293, 298 [298 Pac. 17], is cited to the point that when ''the full penalty of the bond is decreed, interest should not begin until after demand''. The latter case is controlling; but, as in that case, the record here is incomplete. Though demand was alleged in each complaint there was no finding on the issue and the evidence does not disclose when any demand was made. The record is also incomplete in failing to show the amount of the demands. We cannot take appellant's mere statement that the demands were excessive without some reference to the evidence. For these reasons the judgments should follow the rule of the Democa case and carry interest from the date of filing of each complaint as that ''is the only definite date the record fixes as the time of such demand''.

The judgment as to the surety company is reversed, with directions to enter judgments for the respective cross-defendants in accordance with the views heretofore expressed, with interest from the date of filing of the respective complaints. The petition for a rehearing is denied.