[Civ. No. 2405.   Fourth Appellate District.—June 12, 1939.]

RENA WOODMAN et al., Respondents, v. PACIFIC IN-DEMNITY COMPANY (a Corporation), Appellant.

322

Sarau & Thompson for Appellant.

Fred L. Hamblin and Albert H. Ford for Respondents.

MARKS, J.—This is an action to recover from the defendant insurance carrier the total amount of a judgment rendered against W. J. Austin for damages suffered by plaintiffs in an automobile accident. (See *Woodman* v. *Hemet Union High School Dist,* 136 Cal. App. 544 [29 Pac. (2d) 257].) Plaintiffs had judgment in this action on the insurance policy and this appeal followed. This case has been before us once before on appeal (*Woodman* v. *Pacific Indemnity Co.,* 23 Cal. App. (2d) 135 [72 Pac. (2d) 256]), where a judgment for defendant was reversed. We will not repeat the facts set forth at length in the first cited case.

The facts of this case are not in serious dispute. The controversy here revolves around the terms and conditions of the insurance policy issued by defendant and the proper construction to be placed upon them. Therefore, it is necessary for us to detail those terms and conditions with considerable precision.

The effective date of the policy was June 12, 1930. Its term was for one year. The premium had been paid and it had not been cancelled on February 9, 1931, the day Donald Woodman was injured. The named assureds were "Riverside County Council of Boy Scouts of America and/or its spon-

soring organizations, committeemen, and Scout Masters''. W. J. Austin was at all times material here, scout master of Hemet Troop Number 47, a regular Boy Scout troop organized and existing under the Riverside County Council. There were provisions in the policy under which its protection was extended to other unnamed assureds.

The policy contained the following:

''DOES HEREBY AGREE with the Assured named and described as such in the Declarations forming a part hereof, respecting accidental bodily injuries including death at any time resulting therefrom, as follows:

''1. TO INSURE the Assured against loss by reason of the liability imposed by law upon the Assured for damages on account of such injuries, and to pay and satisfy judgments finally establishing Assured's liability in actions defended by the Company, all subject to the limits expressed in Paragraph 10 of the Declarations; . . .

''5. THE FOREGOING AGREEMENTS SHALL APPLY only to such bodily injuries as are sustained or alleged to have been sustained during the policy period defined in said Declarations by any person, excepting an employee of the Assured while engaged in his employment, as the result of an accident . . .

'' (a) Occurring within or upon the premises described in Declaration 4, including the sidewalks or other ways adjacent thereto used or occupied for the purpose described in said Declaration, including injuries sustained elsewhere if caused by an accident originating on said premises, or

'' (b) Occurring elsewhere if such injuries are caused by the Assured's employees while engaged in the course of their employment in prosecuting the business or work described in said Declarations and conducted by the Assured at the location specified herein.

''Said Agreements are made in consideration of the Declarations forming a part hereof and of the premium herein provided.''

Under the head of ''Exclusions'' (otherwise referred to as ''Conditions'') we find the following:

''B Unless otherwise specifically written in or endorsed on this policy, said policy shall not cover bodily injuries or death . . . (4) sustained elsewhere than upon the insured premises if caused by any draught animal, automobile, aircraft or other

vehicle owned, maintained, used or hired by the Assured, including the loading or unloading thereof; . . . ''

In the application (sometimes called the Declaration) for the policy, of which it is made a part, we find the following:

"4. A complete description of the premises and each elevator covered by this policy, the nature of occupancy, the business or work carried on by the Assured within or upon the said premises, the premium rate or rates applicable and the amount of premium are given hereunder.

"(A) Location of Insured premises by Street and Number, Town and State. (B) Nature of Occupancy. (C) Part occupied by Assured. (D) Elevators; Describe each elevator separately giving a designating number for identification (E) Classified Type (F) Motive Power (G) Number of Landings.

"(A) Operations Usual to the Conduct.

"(b) Of a Boy Scout Council Operating.

"(C) From Various Locations.

"(d) None."

Among the endorsements on the policy there appear the following:

"In consideration of the premium charged for this policy, it is understood and agreed: . . .

"4. Clause 4 of Condition (B) If (exemption from liability) caused by any automobile or other vehicle owned, maintained, or hired by any of the Assureds, including the loading or unloading thereof, unless such Assureds donate the use of their automobiles and such automobiles are accepted and duly recorded as set forth in paragraph 7 of this endorsement and filed with the Scout Executives of the Riverside County Council of Boy Scouts of America. . . .

"7. It is also understood and agreed that the policy shall extend to cover as Additional Assureds, such other persons as may donate to the Council without charge, the use of automobiles, providing that the Council or a person authorized by them, shall accept the use of such automobile and make due record of the name of the owner of the automobile, the date of its acceptance, and the time and purposes of its use."

It is conceded that W. J. Austin, being a scout master, is a named assured under the clear terms of the policy. Defendant argues that as the use of the automobile which caused the injury to Donald Woodman was donated without charge

to the council; that as there was no formal acceptance of its use nor record made of the name of the owner, the date of its acceptance or the time and place of its use, no liability can arise because of paragraph "7" of the endorsements last above quoted. This argument overlooks the clear purpose of paragraph "7" of the endorsements, which is to extend the protection of the policy to others than a named assured. As the liability of no other than a named assured is here involved, the lack of applicability of the endorsement is apparent and no further attention will be given to this argument.

■ Defendant urges that the judgment in the original case was rendered against W. J. Austin personally and not as a scout master; that this judgment is final and cannot now be questioned; that, therefore, no liability attaches under the policy which only indemnified W. J. Austin, the scout master.

The same question was presented on the former appeal in this case (*Woodman* v. *Pacific Indemnity Co., supra*), and was decided as follows:

"The controlling question presented is whether the court erred in refusing to permit the appellants to introduce evidence which was offered to the effect that Austin was acting as scout master at the time of the negligent acts, for which he was held liable. The respondent's position is thus stated: 'The judgment in the former case is now final, and we submit that the court here can look only to the judgment, and that the judgment on its face shows that it is against Austin in his individual capacity and not against him in any representative capacity.' The trial court adopted this theory that the prior judgment was controlling and that the matter of the capacity in which Austin was acting at the time could not be gone into in this action since it did not appear on the face of the judgment.

"In our opinion, the court erred in rejecting the proffered evidence. A judgment had been entered against Austin and the only real question in the present action is as to whether he was covered under the policy which had been issued by the respondent. If, in committing the acts of negligence, he was acting as a scout master he was covered as a member of a class named among the assured. Whether or not he was so covered was not material in the other action. The fact that the jury found in favor of the two Boy Scout organizations cannot be taken as a finding that Austin was not acting at the time as

a scout master as he might have been so acting without imposing liability on those organizations. (*Young* v. *Boy Scouts of America,* 9 Cal. App. (2d) 760 [51 Pac. (2d) 191].) Under the circumstances the judgment entered against Austin had no bearing on the question as to whether he was acting as scout master at the time, and is not conclusive on the issue here raised as to whether he was included as an assured under this policy.

"In the present action the question of whether or not Austin was acting in the capacity of a scout master when he performed the acts which constituted negligence is both material and essential, in order to determine whether or not he was included in the classes named as the assured in the policy and covered thereby. In the ordinary action judgment might be obtained against a defendant personally although he was, at the time, acting as the agent of another. If his principal was then covered by a policy such as the one involved here the judgment creditor could sue the insurer and would then be entitled to show, if such was the fact, that the agent was included in a class named among the assureds in the policy and was also covered. While the judgment with which we are here concerned was against Austin personally, the appellants were entitled to show, if they could, that he was covered by this policy. The former judgment was not conclusive on that point . . . "

The question of when a decision establishes the law of the case and is binding on subsequent proceedings in the same case is considered in *Haase* v. *Central Union High School Dist.,* 27 Cal. App. (2d) 319 [80 Pac. (2d) 1044], where it was said:

"Various reasons have been assigned by the courts for the existence of the doctrine of the 'law of the case'. (*Estate of Baird,* 193 Cal. 225, 233 [223 Pac. 974] ; 2 Cal. Jur., p. 949.) No useful purpose would here be served by their restatement. It is sufficient for the purpose of this opinion to recognize that the doctrine is established as a legal principle and that, despite the modern tendency of reviewing courts to raise exceptions thereto, particularly in cases where strict adherence to the principle would produce manifestly unjust results, the doctrine has nevertheless not been abandoned but persists as a general rule of practice and procedure. (*United Dredging Co.* v. *Industrial Acc. Com.,* 208 Cal. 705, 712 [284 Pac. 922].) There is, however, a settled limitation upon the doctrine which

must be taken into account. This qualification is that when an adjudication is made upon a certain state of facts there must be substantial identity of facts on a subsequent appeal in order that the doctrine shall be applicable. (*Hoffman* v. *Southern Pac. Co.*, 215 Cal. 454, 457 [11 Pac. (2d) 387]; *Sheets* v. *Southern Pac. Co.*, 1 Cal. (2d) 408, 411 [35 Pac. (2d) 121].)''

Defendant is asking us to reconstrue the identical judgment, and to reconsider the same question, both of which were before the court and both of which were considered and construed on the former appeal. There is an exact identity of facts. The identical question we are here asked to consider, having been decided, we are bound by our former decision which has become the law of the case. In this connection we desire to state that we have carefully reviewed the arguments of counsel and the decisions cited and are convinced that our former conclusions were correct; that the judgment against Austin was not necessarily rendered against him as an individual, as distinguished from Austin, the scout master, and that the question of the capacity in which Austin was acting in connection with the injury to Donald Woodman is open for decision in the instant case.

Defendant next urges that the complaint fails to state a cause of action against it, because, (1) the allegation that the former judgment ''was obtained by reason of the liability for said injuries imposed by law upon the said W. J. Austin while acting as such Scout Master'' is nothing more than a conclusion of law, and (2) that there is no allegation in the complaint of performance by Austin of the terms of the policy, or any allegation of an excuse for performance.

In addition to the allegation of the complaint which we have just quoted it is alleged that at all times material to the cause of action W. J. Austin was the regularly appointed, qualified and acting scout master of Hemet Troop Number 47 of the Boy Scouts of America.

If we assume, without holding, that the quoted allegation of the complaint is technically defective we cannot see how defendant suffered other than a technical disadvantage therefrom. No demurrer was interposed to the complaint. The question of its sufficiency was first raised during the trial on objections to the introduction of evidence.

The attorneys who are representing defendant in the instant action represented Austin and the other Boy Scout executives in the trial of the damage action, and at least in the defense of Austin, they acted on behalf of the Pacific Indemnity Company. The question of the capacity in which Austin acted in connection with the accident in which Donald Woodman was injured was thoroughly litigated there. The same attorneys appeared in the appeal of that case. On the first appeal of the instant case that question was thoroughly argued. In the trial which resulted in the judgment from which this appeal was taken, both parties introduced all of the evidence they desired to produce on the question, which was thoroughly litigated. Defendant was neither misled nor surprised by reason of the defective allegation, if it be defective. We cannot see how any prejudice resulted.

Section 4½ of article VI of the Constitution prohibits us from reversing a judgment ''on the ground . . . of the improper admission or rejection of evidence, or for any error as to any matter of pleading . . . unless . . . the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice''. Under the facts here we cannot conclude that the error, if any, in the complaint resulted in a miscarriage of justice. We are therefore precluded by the Constitution from reversing the judgment on that ground.

Furthermore, in speaking of the sufficiency of the pleading on the former appeal this court said: ''The complaint in this action sufficiently alleged that Austin was scout master of this particular troop and acting as such at the time of the acts complained of in the original action.'' This holding probably established the law of the case on this question.

Defendant next urges that the complaint failed to allege performance of the terms of the policy by Austin. In this subdivision of its brief defendant fails to point to any specific provision of the policy to which the argument and the cited cases refer. Cases are cited under this heading which hold in effect that in suing the insurance carrier upon a judgment against an assured the injured party stands in no better position than the assured would have occupied had he paid the judgment and brought suit against the insurance carrier. (See, *Hynding* v. *Home Acc. Ins. Co.*, 214 Cal. 743 [7 Pac. (2d) 999, 85 A. L. R. 13] ; *Valladao* v. *Fireman's Fund Indem. Co.*, 13 Cal. (2d) 322 [89 Pac. (2d) 643].)

Defendant then cites cases involving the bankruptcy or insolvency of the assured clauses of policies. This clause of the policy before us gives the injured party the right of action, on a judgment obtained against the insurance carrier, subject to the terms and conditions of the policy and not exceeding the total amount of liability, regardless of the insolvency or bankruptcy of the assured. Under the circumstances of this case we cannot understand the relevancy of these citations. As this clause does not relate to any duty to be performed by Austin or anyone else, no allegation concerning it should be necessary in the complaint on the judgment.

Defendant cites other cases under the notice of accident and cooperation clauses of policies. Donald Woodman was injured on February 9, 1931. Defendant through its attorneys wrote a letter to Austin offering to conduct his defense of the damage action but stipulating that such defense should not be construed as a waiver of any term or condition of the policy. In the damage action Austin and the other Boy Scout executives were defended by these same attorneys who signed the letter to Austin and who are attorneys for defendant here. There is no intimation in the answer that the assured failed to give timely notice of the accident or failed to cooperate with defendant in defending the action.

■ Certainly the giving of timely notice of an accident and of cooperating in its investigation, and the defense of an action based upon it, are not conditions precedent to the validity and enforceability of an insurance policy. Of course, under some circumstances breach of these obligations by an assured may relieve the insurer from liability. Such a breach is a matter of defense and should be pleaded by defendant. The plaintiff in his complaint is not required to anticipate a defense. The rule announced in *Arnold* v. *American Ins. Co.*, 148 Cal. 660 [84 Pac. 182, 25 L. R. A. (N. S.) 6], is applicable here. The Supreme Court there said: "Certain conditions subsequent to the right of recovery, matters of defense, the nonperformanc of conditions subsequent, and certain negative prohibited acts need not be pleaded by plaintiff." (See, also, 14 Cal. Jur. 609, and cases cited.)

■ Defendant next urges that two findings of fact are not supported by any sufficient evidence. The first of those findings is to the effect that the judgment in the damage action was obtained against Austin by reason of the liabilities im-

posed by law upon him while he was acting as scout master. The second finding is to the effect that Austin was acting as scout master at the time he committed the negligent act upon which the judgment in the damage action was based.

The evidence on which those findings are based may be briefly summarized as follows: That Hemet Troop Number 47 possessed a scout barracks which was used for its usual troop activities; that a stone fireplace was being built on the property to be used by the troop in its usual activities; that the project had been approved by scout executives; that the actual work of building the fireplace was being done by Austin and the members of the troop as a scout activity; that stones of a certain size were required for the work; that such stones could be obtained from a river bed some distance from the barracks; that at a troop meeting Austin explained the need of the stones and where they could be found; that he informed the members present that he could furnish a truck in which to haul the stones; that he asked for volunteers to go after them; that Donald Woodman was present at this meeting; that Bob Ogleby volunteered to drive the truck; Bob was to obtain other troop members to assist in the work; that Austin furnished the defective truck; that this truck belonged to the Hemet Union High School District and is described in detail in *Woodman* v. *Hemet Union High School Dist., supra*; that the accident happened and Donald Woodson was injured on one of the trips for the stones.

The foregoing evidence is amply sufficient to justify the challenged findings. The fireplace was being constructed on ground where the usual troop activities were carried on and was to be used in those usual activities. The truck was furnished by Austin to members of the troop and was used in furthering an approved troop activity. It was being used to promote that activity at the time of the accident. Austin was actively engaged in carrying out that activity at the time he furnished the truck and at the time of the accident. His only purpose in furnishing the truck and arranging the trips for the stones was to assist in the completion of the fireplace. He had no other interest in the undertaking than as scout master. The project was no concern of the Hemet Union High School nor of Austin as one of its teachers. Any other inference drawn from the evidence than that set forth in the findings would have been contrary to all of the evidence in the case.

Because Austin wrongfully delivered the possession of the school truck, which was entrusted to him by the school, to the Boy Scouts to be used in a scout activity cannot change the capacity in which he acted in permitting the scouts to use the truck for scout purposes.

The foregoing conclusion renders it unnecessary to separately consider the fourth specification of error that the findings of fact do not support the conclusions of law. As the two challenged findings of fact are supported by the evidence, those findings support the questioned conclusions of law.

Defendant states its fifth specification of error as follows: "Assuming that W. J. Austin was acting in his capacity as scout master, no court has ever held the Boy Scouts of America or any subordinate unit or individual engaged in boy scout activities liable in an action based on negligence."

Defendant cites the case of *Young* v. *Boy Scouts of America*, 9 Cal. App. (2d) 760 [51 Pac. (2d) 191], as its sole authority in support of the foregoing assertion. That case not only fails to support the proposition but is direct authority contrary to the only part of it with which we are here concerned.

In that case the plaintiff sued the Boy Scouts of America, a corporation; Henry Webster, a scout master, and others for damages suffered by Harold P. Young, which resulted from his injury while engaged in a scout activity. The defendants interposed demurrers to the complaint which were sustained and a judgment was entered in their favor. The judgment in favor of the Boy Scouts of America was sustained for reasons clearly set forth in that opinion. It was reversed as to Henry Webster, the scout master, and the other individual defendants and sent back for trial against them on the merits. This is a direct holding that a scout master may be liable for damages caused by his negligent conduct in scout activities.

In passing, it might not be out of place to remark that if no liability for any act of negligence can attach to the "Riverside County Council of Boy Scouts of America and/or its sponsoring organizations, committeemen and Scout Masters", the named assured in the policy in question here, as contended by defendant, then it gave no consideration to those organizations which paid the one hundred fifty dollars premium for the policy.

■ Defendant next urges that the negligent acts of Austin were not covered by the insurance policy. This contention is based upon the argument that the negligent acts of Austin, and the accident, did not occur on the insured premises as required by sub-paragraph four of paragraph "B" of the endorsements, which we have quoted, and which by its terms is limited by the definition of those premises in paragraph four of the application which we have also quoted exactly as it appears in the record. The answers given to the questions propounded in the second sub-paragraph of paragraph four of the application, as those answers were copied in the record, are so meaningless, that we sent for the original exhibit, which we now have before us. Paragraph four there appears as follows:

"4. A complete description of the premises and each elevator covered by this policy, the nature of occupancy, the business or work carried on by the Assured within or upon the said premises, the premium rate or rates applicable and the amount of premium are given hereunder.

---

"(A) Location of Insured Premises by Street and Number, Town and State.

"(B) Nature of Occupancy—(C) Part Occupied by Assured.

(D) Elevators: Describe each elevator separately giving a designating number for identification—(E) Classified Type— (F) Motive Power—(G) Number of Landings.

---

"(a) OPERATIONS USUAL TO THE CONDUCT
"(b)  OF A BOY SCOUT COUNCIL OPERATING
"(c) FROM VARIOUS LOCATIONS.
"(d) NONE."

In the above quotation the matter above the second line is a part of the insurance policy's printed form while that below the second line is typewritten. The typewritten sentence commencing with the word "OPERATIONS" and ending with the word "LOCATIONS" is one sentence in capital letters without any punctuation mark except the period after the final word. This sentence is an answer to the following above-quoted questions, namely, (A) Location of insured premises . . . —(B) Nature of occupancy—(C) Part occupied by assured. The last typewritten answer, "(d) NONE", is evidently a reply to the prior questions "D", "E", "F" and "G".

The fair construction to be put on these questions and answers, and the information conveyed by them to defendant, may be paraphrased as follows: You are insuring the named assured against loss imposed by law to any person arising from injury occurring on the premises occupied by us which includes those premises where operations usual to the conduct of a Boy Scout Council operating from various locations may be conducted. The premises of the insured include any location on which any usual operation of scouting may be conducted.

If defendant is dissatisfied with this construction, which we believe reasonable, it has only itself to blame, for it prepared the document. It is well settled that any ambiguity in an insurance policy prepared by the insurer must be strictly construed against the insurance company causing it. If any such ambiguity is subject to two constructions the one most favorable to the assured must be adopted. (*Welch* v. *British American Assur. Co.,* 148 Cal. 223 [82 Pac. 964, 113 Am. St. Rep. 223, 7 Ann. Cas. 396]; *Witherow* v. *United American Ins. Co.* 101 Cal. App. 334 [281 Pac. 668].)

It follows that as the description of the premises of the assured covered all locations where the usual operations of a Boy Scout troop were conducted, the place where the negligence of Austin occurred and the place where the accident happened in which Donald Woodman was injured, were part of the premises of the assured, and as there was no exception in the policy relieving the insurer from liability under the facts before us, the loss resulting from the accident was covered by the policy.

Defendant urges that as the automobile was furnished by Austin, a named assured, and as no record of its loan, the name of the owner, the date of its acceptance, and the purpose of its use was made in the Boy Scout records as required by paragraph four of the endorsements which we have already quoted, no liability arose under this policy.

This paragraph refers to and is subject to the provisions of clause four of the exclusions or conditions which we have quoted. This clause is only operative where the injury is "sustained elsewhere than upon the insured premises". As we have held that the injury occurred on the insured premises this argument must fail.

We reach this conclusion because paragraph four of the endorsements must be read and construed in connection with all of the other provisions of the policy and particularly with sub-paragraph "(a)" of paragraph five of the policy which provides coverage for bodily injuries sustained upon the premises described in paragraph four of the application or declaration.

If we are wrong in this conclusion there is another controlling ground for holding that the provisions contained in paragraph four of the endorsements do not apply to the facts of the case. That paragraph, taken by itself, exempts the insurer from liability "caused by any automobile . . . owned, maintained, or hired by any of the assureds" unless the automobile be registered in the Boy Scout records as provided in paragraph seven of the endorsements.

Austin furnished the use of the automobile to the Boy Scouts. In taking the automobile for the use of the Boy Scouts we have held that he was in the position of a trespasser. (*Woodman* v. *Hemet Union High School Dist., supra.*) It must be admitted that Austin neither *owned* nor *hired* the vehicle. It is urged that Austin "maintained" the vehicle and therefore came within the language of the provisions we are considering. It is true that he had possession of the truck for the school district and either personally or through students in his classes kept it running. In so doing he was acting for the school district. Therefore, it was the school district and not Austin that maintained the truck.

The provisions of an insurance policy, prepared by the insurer, must be strictly construed in favor of the assured. It follows that as the motor vehicle causing the injury was neither "owned, maintained or hired", by Austin the provisions of paragraph four of the endorsements have no application to the facts of this case.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.