[Civ. No. 6100.   Fourth Dist.   Mar. 17, 1961.]

A. H. KARPE, Appellant, v. GREAT AMERICAN INDEMNITY COMPANY (a Corporation), Respondent.

Mack, Bianco, King & Eyherabide and D. Bianco for Appellant.

Borton, Petrini, Conron, Brown & Condley for Respondent.

COUGHLIN, J.—This is an appeal from a judgment of dismissal entered after an order sustaining a general demurrer without leave to amend. The primary issue on this appeal is whether the liability of a bailee to his bailor for the slaughter of a cow, the subject of their bailment, which the bailee mistook for his own cow, is covered by a policy of liability insurance which indemnifies against liability for damages because of the destruction of property caused by accident, but excludes property ''in the care, custody or control of the insured.''

The plaintiff and appellant herein, Karpe, who raised, bred and sold registered Hereford cattle, was the owner of a bull used for breeding purposes. A person by the name of King owned a registered Hereford cow named Domino Belle 2d which she wished bred by plaintiff's bull, and for this purpose, by agreement, left her cow at plaintiff's ranch. During this time the plaintiff mistook Domino Belle 2d for one of his cows and sent her to a slaughterhouse, where she was destroyed. King brought an action against Karpe, the plaintiff herein, for damages resulting from the loss of the cow, and recovered a judgment in the sum of $5,000, which was affirmed on appeal. (*King* v. *Karpe*, 170 Cal.App.2d 344 [338 P.2d 979].)

During all of this time Karpe, the plaintiff herein, was the insured in a comprehensive multiple liability policy issued by the defendant company, the respondent herein, under which the insurer agreed: ''To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.''

The policy contained an exclusionary clause which provided: ''This policy does not apply: . . . to injury to or destruction of . . . property in the care, custody or control of insured or property as to which the insured for any purpose is exercising physical control, . . .''

When the plaintiff was served with summons and complaint in the action brought by King, he gave notice thereof to the defendant company which refused to defend him, disclaiming coverage under the policy. The complaint by King named Karpe and the Red Slaughter House as defendants and, an

amended complaint which followed, after stating facts establishing a bailment, alleged that "Karpe, without the consent of plaintiff [King], dispatched said animal to the defendant Red Slaughter House, where said defendants caused her to be destroyed." The defendant sued as the Red Slaughter House was not served, and was not a party to the judgment rendered.

The plaintiff herein, Karpe, brings this action against the defendant insurance company to recover the amount which he was required to pay on the judgment in favor of King, i.e., $5,935.35, and also to recover the amount he expended as attorney's fees and costs in defense of that action, i.e., $1,744.66. In his complaint, the plaintiff refers to the indemnity provision of his policy which heretofore has been quoted; alleges in substance the facts heretofore related; and states specifically that "Domino Belle 2d, through mistake and inadvertence was sent by plaintiff to the slaughterhouse, where said animal was destroyed by said slaughterhouse." A copy of the insurance policy was attached to the complaint, as well as a copy of the amended complaint upon which King recovered judgment against Karpe.

For the purpose of clarification, it should be noted at this point that the indemnity and exclusionary provisions of the insurance policy heretofore quoted are those set forth in the body of that policy. The indemnity provision is identified as "Coverage D" and is the one specifically referred to in the complaint. In his briefs on appeal, the plaintiff quotes an indemnity provision contained in an endorsement to the policy, which is similar to the provision quoted herein except that the words "caused by accident" are omitted. The endorsement does not apply "to the conduct of a business of which the named insured is the sole owner." Karpe was the sole owner of the cattle business described in the complaint. Consequently, the endorsement does not apply to this case. The defendant, in its brief, refers to certain exclusionary provisions contained in the endorsement. For the reasons noted, the exclusionary provisions governing a determination of this case are those contained in the body of the policy and not those in the endorsement, although the one heretofore quoted appears in both parts of the policy.

If it be assumed that the liability for damages incurred by the plaintiff on account of the judgment against him, was a liability on account of the destruction of property caused by accident (*cf. Geddes & Smith, Inc.* v. *St. Paul Mercury In-*

*demnity Co.*, 51 Cal.2d 558, 563 [334 P.2d 881]; *Ritchie* v. *Anchor Casualty Co.*, 135 Cal.App.2d 245, 252 [286 P.2d 1000]) the inquiry raised by the exclusionary clause is whether the property destroyed by accident was ''in the care, custody or control'' of the plaintiff.

An apparent purpose of the exclusionary clause is to except from policy coverage liability on account of damage to property held under bailment.

King's amended complaint against Karpe alleged that Karpe had dispatched Domino Belle 2d to the slaughterhouse and had caused the animal to be slaughtered; it is not alleged that Karpe had negligently dispatched the cow or negligently caused it to be slaughtered; neither is it alleged that Karpe wrongfully dispatched the cow or wrongfully caused it to be slaughtered.

Under the facts as alleged, King was entitled to damages from Karpe for the destruction of Domino Belle 2d under several legal theories:

(1) breach of contract, i.e., based on a breach of the bailee's duty to exercise due care to keep and preserve the property of the bailment in as good condition as when received (*George* v. *Bekins Van & Storage Co.*, 33 Cal.2d 834, 838 [205 P.2d 1037]; *Wolfe* v. *Willard H. George, Inc.*, 110 Cal.App. 532, 535 [294 P. 436]);

(2) in a similar vein, for negligence, i.e., to recover for damage proximately caused by the bailee's negligence (*George* v. *Bekins Van & Storage Co., supra,* 33 Cal.2d 834, 838; *Crescent Bed Co.* v. *Jonas*, 206 Cal. 94, 96-97 [273 P. 28]); and

(3) also for conversion, which would treat the acts of the bailee as a wrongful exercise of dominion over the bailor's property (*George* v. *Bekins Van & Storage Co., supra,* 33 Cal.2d 834, 837).

If Karpe intended to dispatch Domino Belle 2d to the slaughterhouse and cause her to be slaughtered, his acts constituted a wrongful exercise of dominion over the cow and the theory of recovery would have been for conversion. (*George* v. *Bekins Van & Storage Co., supra,* 33 Cal.2d 834, 837.) Under these circumstances, the claimed liability, being due to the insured's willful wrong, would be excluded from coverage. (Ins. Code, § 533; *Arenson* v. *National Automobile & Cas. Ins. Co.*, 45 Cal.2d 81, 84 [286 P.2d 816].) On the other hand, if Karpe failed to deliver the cow to King because of negligence, recovery could have been had on either a breach of contract or negligence theory. (*George* v. *Bekins Van &*

*Storage Co., supra,* 33 Cal.2d 834, 838.) In this event the claimed liability would be within policy coverage unless expressly excluded.

In an action upon a personal liability policy, a judgment against the insured in a prior action which the insurer refused to defend is conclusive evidence of the insured's liability and, if the complaint upon which that judgment is based alleges facts showing a liability subject to coverage by his policy, the judgment also is conclusive evidence of these facts. (*Osborne* v. *Security Ins. Co.,* 155 Cal.App.2d 201, 206 [318 P.2d 94]; *Ford* v. *Providence Washington Ins. Co.,* 151 Cal.App.2d 431, 438 [311 P.2d 930]; *Lamb* v. *Belt Casualty Co.,* 3 Cal.App.2d 624, 630 [40 P.2d 311]; *Greer-Robbins Co.* v. *Pacific Surety Co.,* 37 Cal.App. 540, 543 [174 P. 110].)

On the other hand, such a judgment does not foreclose an insured from establishing a fact essential to proof of coverage in a subsequent policy action where that fact is not in issue in the action resulting in the judgment establishing liability. (*Woodman* v. *Pacific Indem. Co.,* 33 Cal.App.2d 321, 326 [91 P.2d 898]; *Lamb* v. *Belt Casualty Co., supra,* 3 Cal.App.2d 624, 632.) Likewise, in the subsequent action the insurer is not foreclosed from establishing facts which show noncoverage when these facts were not in issue in the prior action. (*Bryson* v. *International Indemnity Co.,* 88 Cal.App. 100, 103-104 [262 P. 790].) The complaint in the liability action may be ambiguous, as was the complaint in the instant case where the acts basic to liability may have been held to be either intentionally wrongful or negligent. Relying upon such a state of the record, the plaintiff in the case at bar alleges in his complaint against the insurance company that, ''Domino Belle 2d, through mistake and inadvertence was sent by plaintiff to the slaughterhouse, where said animal was destroyed by said slaughterhouse.'' The apparent purpose of this allegation is to clarify the charging allegations in the amended complaint upon which the judgment in favor of King was based; to eliminate the theory of conversion; and to bring the liability issue within the accidental realm referred to in the policy. A copy of this amended complaint was attached to and incorporated in the present complaint. The plaintiff claims that these allegations bring his liability within the coverage provided by his policy; that his mistake in sending the cow to the slaughterhouse was an accident; and that the cow's destruction at the slaughterhouse took place when it was not under his care or control. In his briefs the plaintiff states that, in

truth, the cow had been sold to the slaughterhouse and if he had been given permission to amend his complaint he would have alleged such fact. We will assume such an allegation for the purpose of this review and conclude that the cow was not under the care or control of the plaintiff at the time it was slaughtered. Upon this basis, the plaintiff contends that his liability to King for damages is not within the exclusionary provisions of the policy; that these provisions apply only when the property destroyed is under the care and control of the insured at the time of its destruction. The fallacy of this contention lies in the assumption that the exclusionary provisions are directed to the time when the destruction of the property which is the subject of damages for liability occurs. The policy is concerned with the insured's liability for damages; indemnifying him against such damages whether they are damages for injury to or the destruction of property, including its loss of use. Under the circumstances of this case the fact of injury or destruction determines primarily the amount of damages as distinguished from liability for damages. The liability for which such damages are awarded may be attributable to many factors. The exclusionary provisions of the policy are concerned with the insured's liability; with the act that makes him liable for damages because of injury or destruction. As a consequence, the decisive factor is control of the cow at the time of the act which made the insured liable for its destruction, rather than control at the time of destruction.

The foregoing conclusion is verified in a variety of ways. Addressing ourselves to the present complaint and interpreting the allegations therein most favorably to the plaintiff, it appears that the only act of liability chargeable against him is that he sold or sent Domino Belle 2d to the slaughterhouse through mistake or inadvertence. The insurance policy coverage applies to liability for ''damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.'' If Domino Belle 2d was destroyed by accident, that accident happened when the plaintiff mistakenly or inadvertently sold or sent her to the slaughterhouse; she was then under his care and control; the exclusionary provision in question applied; and the liability incurred was not within the policy coverage. Under any circumstances, plaintiff's liability to King grew out of the bailment, i.e., out of the fact that he had the care and custody of Domino Belle 2d and falls squarely within the purposes of the exclusion.

Accepting the allegations of the present complaint and assuming that Karpe's liability was not based on a willful conversion, which would have excluded it from coverage (Ins. Code, § 533, *cf. Arenson* v. *National Automobile & Cas. Ins. Co.,* 45 Cal.2d 81, 84 [286 P.2d 816]), the fact remains that the liability charged in the King amended complaint was grounded upon a breach of contract or negligence growing out of the pleaded bailment. The act of mistakenly or inadvertently selling or sending the cow to the slaughterhouse instituted the plaintiff's liability. The slaughter of the cow, which was a proximate result of the act causing liability, determined the amount of damages to be awarded on account of that liability. If the plaintiff had mistakenly slaughtered the cow on his ranch there is no doubt that his liability therefor would be excluded from coverage under the provisions in question. No reason exists for a distinction between coverage for his liability under such circumstances and those now before the court, where the plaintiff mistakenly or inadvertently sold or sent the cow to a place where it was going to be slaughtered.

The conclusion of the trial court that the plaintiff's liability to King was not covered by the policy in question was proper. Although the plaintiff complains that he was not given permission to amend his complaint, it does not appear that any amendment he could make would take his case out of the exclusionary provisions herein considered, and the order sustaining the defendant's demurrer without leave to amend was not erroneous. (*Baker* v. *Littman,* 138 Cal.App.2d 510, 514 [292 P.2d 595]; *Melikian* v. *Truck Ins. Exchange,* 133 Cal.App.2d 113, 116 [283 P.2d 269]; *Barrier* v. *Alexander,* 100 Cal. App.2d 497, 501 [224 P.2d 436]; *Hauser* v. *Pacific Gas & Elec. Co.,* 133 Cal.App. 222, 228 [23 P.2d 1068].)

The plaintiff seeks to recover not only upon the defendant's covenant to indemnify against loss arising out of liability for damages, but also upon the defendant's covenant to defend him against an action to establish such liability. ▮▮ The obligation to defend is measured by the terms of the policy and the allegations of the complaint against the insured. (*Firco, Inc.* v. *Fireman's Fund Ins. Co.,* 173 Cal.App.2d 524, 527 [343 P.2d 311]; *Ritchie* v. *Anchor Casualty Co.,* 135 Cal. App.2d 245, 250 [286 P.2d 1000]; *Lamb* v. *Belt Casualty Co., supra,* 3 Cal.App.2d 624, 630; *Greer-Robbins Co.* v. *Pacific Surety Co., supra,* 37 Cal.App. 540, 544.) ▮ If the

allegations of that complaint show a potential liability within policy coverage, the duty to defend exists. The obligation to defend is broader than the obligation to indemnify. Nevertheless an insurer is not required to defend an action against its insured when the complaint in that action shows on its face that the injury complained of is excluded from policy coverage. (*Liberty Bldg. Co.* v. *Royal Indem. Co.*, 177 Cal.App.2d 583, 587 [2 Cal.Rptr. 329]; *Remmer* v. *Glens Falls Indem. Co.*, 140 Cal.App.2d 84, 90 [295 P.2d 19, 57 A.L.R.2d 1379].) In the case at bar, as heretofore noted, Karpe's liability under the allegations of the King amended complaint would be based upon his acts while he had Domino Belle 2d in his care and under his control. For the reasons heretofore stated, the exclusionary provisions of the policy applied and the liability alleged did not come within policy coverage. There was no duty to defend.

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.