[Civ. No. 1555.   Third Appellate District.—February 6, 1918.]

ALFRED TRELOAR, Respondent, v. KEIL & HANNON (a Copartnership, etc.), et al., Appellants.

INSURANCE LAW—ACCIDENTAL INJURIES—INDEMNITY AGAINST LOSS AND EXPENSE FROM CLAIMS FOR DAMAGES—LIABILITY OF INSURANCE COMPANY—WHEN ATTACHES.—Under a policy of insurance insuring "against loss and expense arising from claims upon the assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered during the period of the policy by any person, and caused by the horses or vehicles in his service and use thereof, while in charge of the assured or his employees," and providing that "no action shall lie against this company for any loss or expense under this policy unless it shall be brought for loss or expense actually sustained and paid in consequence of a final judgment within ninety days from the date of said judgment and after trial of the issue," the liability of the indemnifying company

only attaches after loss or expense has been actually sustained and paid by the indemnitee.

ID.—NOTICE OF ACCIDENT—SETTLEMENT OR DEFENSE OF SUIT BY INSURER —LIABILITY NOT CHANGED.—A provision in such a policy that upon the occurrence of an accident the assured shall give the company immediate written notice, and the company shall, at its own expense, settle or "defend" the suit, does not change the liability of the insurer, since the word "defend" does not mean to successfully defend, but to contest the suit.

ID.—CONSTRUCTION OF CODE—LIABILITY NOT CHANGED.—The liability of an insurance company under such a policy is not intended to be changed by subdivision 2 of section 2778 of the Civil Code, providing upon an indemnity against claims or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof.

CONTRACT—CHANGE OF TERMS—POWER OF LEGISLATURE.—Where parties have entered into a lawful contract and clearly expressed their intention, the legislature cannot provide a different contract for them.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge.

The facts are stated in the opinion of the court.

Meredith, Landis & Chester, and Wachhorst & Wachhorts, for Appellants.

L. T. Hatfield, and Frank A. Prior, for Respondent.

BURNETT, J.—Plaintiff was injured in consequence of being struck by a vehicle driven by said E. P. Hannon, of the said firm. The action against said copartnership and the individual members thereof was based upon the claim of negligence in producing said accident and the evidence was sufficient to sustain the finding to that effect.

The claim as to the casualty company's liability grows out of the execution by said company of an indemnity insurance policy issued to said Keil & Hannon.

The said policy provides:

"Pacific Coast Casualty Company, of San Francisco, California, hereinafter called the Company

hereby insure

—Keil & Hannon—

of the County of Sacramento State of California hereinafter called the Assured,

"Against loss and expense arising from claims upon the Assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered during the period of this policy by any person, and caused by the horses or vehicles in his service and use thereof, while in charge of the Assured, or his employees."

Said policy also provides that "no action shall lie against this company for any loss or expense under this policy unless it shall be brought for loss or expense actually sustained and paid in consequence of a final judgment within ninety days from the date of said judgment and after trial of the issue."

There is no contention that Keil & Hannon, or either of them, or anyone on their behalf, has paid any judgment or any money in consequence of the injury suffered by the plaintiff, nor is there any contention that any final judgment has been obtained in the action.

The complaint herein was brought against the defendants upon the theory that they are jointly and severally liable for the damages suffered, and the judgment, except as to the amount of damages, was in accordance with the prayer of the complaint.

From the portions of the policy which we have hereinabove quoted there can be no possible doubt that the parties thereto intended—and by apt language expressed their intention—that the liability of the indemnifying company should attach only after loss or expense had been actually sustained and paid by the indemnitee.

We are at a loss to understand how such intention could be more accurately or plainly expressed. It is true that the language is "that no action shall lie against the company" instead of "that no liability shall accrue to the company." But it is too plain for argument that if no action will lie, no liability will be incurred.

It may be stated, also, that the portion of the said policy hereinabove first quoted by express language limits the insurance to "loss and expense" incurred by the assured. This language necessarily implies that the assured must have suffered loss and expense before he has any claim against the insurance company for indemnification. It is to be observed that the insurance is not against liability that may be incurred by the assured. If so, a very different case would be presented.

36 Cal. App.—11

However, the conclusion of the lower court in awarding judgment against said insurance company is sought to be justified by reason of the following provision in said insurance policy:

"*B*. Upon the occurrence of an accident the Assured shall give to the Company, or to its duly authorized agent, immediate written notice thereof, with the fullest and most accurate information obtainable; and the Company, at its own expense, will make such investigation as it may deem necessary. If a claim is made on account of an accident, the Assured shall give like notice thereof; and the Company at its own expense, will settle or contest the same. If a suit is brought on account of an accident, the assured shall forward immediately to the Company, or to its duly authorized agent, every process and paper served upon him. The Company, at its own expense, will settle or defend said suit whether groundless or not; the moneys expended in said defense shall not be included in the limits of the liability fixed under this policy. The Assured shall not assume any liability, nor interfere with any negotiation for settlement or any legal proceeding, nor incur any expense nor settle any claim except at his own cost, without the written consent of the Company."

It seems to be thought that this provision modifies, changes, or nullifies the other provisions limiting liability to loss or expense that has been incurred and paid by the assured, but attributing to the language its ordinary significance we can reach no such conclusion. The purpose of the agreement requiring notice to be given to the indemnitor of any action that may be brought on account of an accident and authorizing the company to contest or settle the same was to protect the interest of the company, to prevent any possible collusion between the plaintiff and the assured; and it is quite natural and reasonable that since the company was interested in any judgment and the amount that might be awarded in the action, it should want to appear and contest the proceeding.

It is easy to understand, also, why the company should desire to have the option of settling or contesting the litigation, and that the matter should not be taken out of its hands by reason of any negotiation for settlement on the part of the assured.

A fair construction of the said provisions leads to the conclusion that instead of modifying, defeating, or nullifying the effect of the language limiting the liability of the insurance company to the loss or expense incurred by the assured, they operate to extend an additional protection to the assured in the matter of providing that the expense of a contest of any litigation should be borne by the company and not included in the limits of the liability fixed by the policy, and also to authorize and afford to the company the protection of conducting or of contesting or defending said litigation.

It must be said, however, that there is some respectable authority for the position taken by the respondent.

The most carefully considered case in line with this contention is *Sanders* v. *Frankfort Marine etc. Ins. Co.*, 72 N. H. 485, [101 Am. St. Rep. 688, 57 Atl. 655], wherein it was held: "So far as the agreement to defend involves the relief of the assured from the expense of such litigation, that agreement also involves the performance of the contract of indemnity by the assumption of the liability indemnified against."

This conclusion is reached by reason of the court's opinion of the meaning of the expression, "to defend." The court attributed to this phrase the signification, "to successfully defend." In other words, it is held that the insurance company agreed that it would defend successfully any litigation for damages that might be instituted against the assured. To defend successfully was held equivalent to the expression to assume liability. Hence the court held that by this covenant the insurance company agreed to be subrogated to the liability incurred by the assured. It seems to us quite manifest that the said court placed a wrong interpretation upon the language used by the parties to said insurance policy.

The expression "to defend" does not ordinarily mean, we think, to defend successfully, but as used herein its meaning is to contest the suit. We see nothing in the expression to indicate the intention of the insurance company to assume liability of the assured and to pay whatever judgment might be awarded in the action. Of course, the policy should be construed so as to give effect to every portion of it if such construction is reasonable, and we can see no inconsistency

or conflict in the different provisions that we have herein-before quoted.

It may be said also that the respondent relies upon the case of *Moore* v. *Los Angeles Iron & Steel Co.*, 89 Fed. 73, wherein it was held that section 2777 of the Civil Code, providing that one who indemnifies another "against an act to be done by the latter is liable jointly with the person indemnified, and separately to every person injured by said act," is not limited to cases where the indemnitee binds himself, or is bound by law, to do some act that may result in damage to another, or to cases in which the indemnitor is held to be a joint trespasser or tort-feasor with the indemnitee; "but it includes all cases of indemnity against future contingencies."

It is to be observed, however, that the policy of insurance in that case indemnified "against liability for personal injuries," and the language is thus quite different from that fixing the liability of the insurance company in the present instance.

And it must be said also that the great and overwhelming weight of authority is decidedly against the position taken by respondent.

In *Poe* v. *Philadelphia Casualty Co.*, 118 Md. 347, [84 Atl. 476], the policy provided that the surety company "would on demand pay to said plaintiff the amount of any judgment recovered by it in said suit not exceeding six thousand dollars with interest." Therein are traced historically indemnity policies issued by insurance companies, and it is pointed out that in the earlier ones the insurance was provided against "*Liability*" incurred by the assured, and that under such policies the courts held that the liability of the insurance companies was fixed by the rendition of a final judgment, and that the casualty companies were liable on their contract even though the employer had not discharged his liability by payment. Several decisions are cited based upon a construction of this language of the policy. Thereafter the wording of the policies was changed to cover only liability which had been paid. Attention is called to decisions construing this language, wherein it was held, "The contract of the insurance company does not require that the payment should be made in cash but that it is satisfied if the payment is made in property." Thereafter the language of

the policies was changed by the insurance companies so as to limit recovery to *"losses"* resulting from liability and actually paid by the employer in money.

And the court, after quoting the language of said policy, said: "The distinction which is decisive of this case is now firmly established, and is nowhere more clearly stated than in *American Emp. Liability Ins. Co.* v. *Fordyce*, 62 Ark. 562, [54 Am. St. Rep. 305, 36 S. W. 1051], in these words: 'The difference between a contract of indemnity and one to pay a legal liability is that upon the former an action cannot be brought and a recovery had until the liability is discharged; whereas upon the latter the cause of action is complete when the liability attaches.' "

A large number of cases and other authorities are cited in support of said view.

In *Finley* v. *United States Casualty Co.*, 113 Tenn. 592, [3 Ann. Cas. 962, 83 S. W. 2], it was held: "Agreements in an employer's liability policy that, if suit is brought against the assured, he shall immediately forward the process to the insurer, which will defend against or settle the claim, do not, when considered with a provision of the policy declaring its purpose to be indemnity to the assured 'against loss from liability for damages,' and another agreement that no action shall lie against the insurer in reference to any loss under the policy unless brought by the insured himself to reimburse him for payment by him in satisfaction of a judgment, render the policy one of indemnity against liability, but it is a policy against loss or damage by reason of liability, under which the amount of insurance does not become available until payment of the loss by the assured, and cannot be impounded by an employee on recovery of a judgment against his employer."

In *Frye* v. *Bath Gas & Electric Co.*, 97 Me. 241, [94 Am. St. Rep. 500, 59 L. R. A. 444, 54 Atl. 395], it was held by the supreme court of Maine that "a contract to indemnify an employer against loss by reason of liability for accidental injuries to employees does not inure to the benefit of an injured employee so that he can enforce payment of it in case the employer becomes insolvent and makes an assignment for creditors before he receives his judgment so that the judgment cannot be enforced—especially where the contract provides that no action shall lie against the insurer, as

respects any loss under the policy, unless it shall be brought by the assured himself to reimburse himself for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue.''

In *Cushman* v. *Carbondale Fuel Co.*, 122 Iowa, 656, [98 N. W. 509], it was said: ''While the policy provided that the guaranty company might appear and defend for the fuel company in any action brought against it for personal injuries, such provision was for the protection of the guaranty company alone, and imposed no liability upon it beyond the terms of the contract. A court of equity can no more disregard the express provisions of the contract than could a court of law, and neither can make a new contract for the parties which would impose a liability not originally contracted for; hence, whatever relief a court of chancery might grant plaintiff in any event must of necessity be based upon and be determined by the contract which the parties have themselves made. The only obligation of the guaranty company was to indemnify the fuel company against 'a loss actually sustained and paid in satisfaction of a judgment after trial of the issue.'

''This covenant is as explicit and certain as language could well make it, and, as between the parties to the contract, no recovery could be had against the guaranty company because the judgment against the fuel company was not paid, and consequently the covenant was not broken.''

There is a large number of cases cited in support of the views announced by the court.

In *Connolly* v. *Bolster*, 187 Mass. 266, [72 N. E. 981], it appears that the employer's liability policy was subject to the agreement that if any suit was brought for damages, immediate notice should be given to the insurer, so that it could defend or settle the same, and that the insured would not settle or interfere with negotiations for settlement or in any legal proceeding without consent of the insurer, and it was further provided that ''no action shall lie against the insurer for any loss under the policy unless it shall be brought by the insured himself to reimburse himself for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issues against the assured for personal injuries.'' It was held by the court that ''making a payment of a judgment against the defendant is no part of a cove-

nant to defend the action,'' and there was no claim against the insurance company because the insured had not paid the judgment, and therein was recognized the difference between such policies and one insuring against *liability* of the employer.

In *Carter* v. *Aetna L. I. Co.*, 76 Kan. 275, [11 L. R. A. (N. S.) 1155, 91 Pac. 178], the policy contained the stipulation as to liability similar to the one before us, and the court held that it was a contract of indemnity for the benefit of the assured and that no right of action thereon arose against the insurance company, until the assured sustained a loss by payment of a liability. The said policy contained a similar provision in reference to the defense or settling of an action, and it was held by the court that this did not change the effect of the other provisions as to its liability, the court saying:

''The fact that the insurance company made the defense for the bridge company against plaintiff's claim for damages did not estop it from denying liability under its contract. The right to defend was specifically given by the contract, and this burden was assumed for the reason that the award to be made in the proceeding might ultimately be the measure of its own liability. To defend the action in behalf of the assured was in no sense an agreement to pay the plaintiff's judgment, and could not have misled the plaintiff.''

A similar view is expressed in *Puget Sound Imp. Co.* v. *Frankfort Marine etc. Ins. Co.*, 52 Wash. 124, [100 Pac. 190].

The provisions of the policy therein construed were similar to the ones before us, and it was therein held that the policy constituted a contract of ''indemnity against loss'' and not against liability merely, and no right of action accrued thereon until the assured had actually paid a judgment rendered against him.

In *Allen* v. *Gilman, McNeil & Co.*, 137 Fed. 136, a similar policy was construed by the circuit court of Pennsylvania, and it was therein held that the policy was an agreement insuring the defendant against loss and not against liability, and therein reference is made to the case of *Sanders* v. *Frankfort Marine etc. Ins. Co.*, 72 N. H. 485, [101 Am. St. Rep. 688, 57 Atl. 655], as follows:

"Against the ruling thus referred to is the single case of *Sanders* v. *Frankfort etc. Co.,* 72 N. H. 485, [101 Am. St. Rep. 688, 57 Atl. 655], in which an opposite conclusion is reached by the supreme court of New Hampshire in construing a policy like the one now under consideration. The opinion is careful and deserves much respect; but it is certainly opposed to the weight of authority, and I am not satisfied with the construction of the policy the court found it necessary to adopt in order to avoid the force of the provision forbidding suit by the insured until after he has paid the employee's judgment."

It is further said that the objection to the construction placed upon the policy by the said New Hampshire court is: "That it destroys a plain, unambiguous provision by what appears to be a pure assumption that the parties did not mean what they clearly said. The suits which they had in mind and provided for were suits by the insured for losses, 'under this policy,' and for such losses the insurance company was liable whether it had defended the employees' suits or not. If it had defended these, it would probably be estopped to deny its liability afterward. If it had refused to defend, taking the ground that the policy did not cover the particular injury, it could raise that question afterward when a suit should be brought by the insured against it after the employee had obtained a judgment and had been paid."

It might be said also that in *Northam* v. *Casualty Company of America,* 177 Fed. 981, a different construction is placed upon said section 2777 of the Civil Code from that in the Moore case (89 Fed. 73), and it is held that said section is to be regarded as a declaration of the common law and that it announces a rule of no greater import. That it applies, in other words, to joint tort-feasors or where the liability of the indemnitor and indemnitee is joint and concurrent. As illustrative of this position are cited *Herring* v. *Hoppock,* 15 N. Y. 409; *Davidson* v. *Dallas,* 8 Cal. 227; *Lewis* v. *Johns,* 34 Cal. 629.

As to said section we may say that it would not be competent for the legislature to modify, defeat, or nullify a contract of the parties by creating a liability that was not contemplated or provided in their contract, and, in the second place, it is entirely obvious by the provisions of the succeeding section 2778 that the legislature did not intend to

change the liability of the indemnitor in such policy as the one herein involved.

For therein it is provided:

"2. Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof."

It may be stated finally that the encyclopedias and textbooks approve the doctrine which we have herein announced.

Applying the familiar rules of interpretation we can reach no other conclusion than that the surety company is not liable for this claim. To hold that the surety company bound itself to defend *successfully* any suit that might be brought against the indemnitee and to assume any liability of the latter, and, therefore, satisfy any judgment that might be obtained against the employer in such case and under the circumstances herein appearing, would be doing violence to the language of the contract adopted by the parties themselves and supplying an additional covenant not to be found in the policy.

There is some contention made that the judgment against the partnership cannot be supported, for the reason that the partnership was dissolved before the action was begun. There is no doubt, however, that it was in existence at the time of the accident and that the suit was properly brought against said partnership and the individual members thereof. It is equally clear that the judgment against C. H. Keil and E. P. Hannon, and each of them, is justified, and under the circumstances it would seem to be a matter of no moment to them whether the partnership is still in existence.

The judgment as to the Pacific Coast Casualty Company, a corporation, is reversed and in other respects it is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 8, 1918, and the following opinion then rendered thereon:

BURNETT, J.—Respondent in his petition for a rehearing claims that the court has construed the contract of indemnity in favor of the insurer rather than the insured, whereas it

is the latter that should be favored. We are aware of the rule that justly requires the courts to resolve doubtful and obscure provisions so as to give the fullest protection possible to the interests of the insured, and we are in accord with that policy, but it seems to us that to support the position of respondent in this case would require us to do violence to the plain terms of the contract which the parties have deliberately chosen.

Petitioner, with some degree of acerbity, complains because we failed to notice specifically some of the cases cited by respondent, especially *Rodgers* v. *Pacific Coast Casualty Co.,* 33 Cal. App. 70, [164 Pac. 1115]. Of course, there must be some limit to an opinion, and it is not generally supposed that the appellate courts in that respect usually err upon the side of brevity. The cases cited by respondent, though, were examined, and we thought our reference to them was sufficient for the purpose of the case in expressing our views as to the merits of the controversy.

As to the Rodgers case, we may add that in the opinion of the second district court of appeal, written by Mr. Justice James, for whose judgment we have the highest opinion, the language of a policy similar to the one before us was construed in harmony with respondent's contention herein, but it is to be noted that the affirmance of the judgment of the lower court was also grounded upon the other position that there had been a payment of the judgment by the indemnitee; and, in denying the petition for a hearing therein, the supreme court limited its concurrence to that view, saying that the opinion of the district court "also proceeds upon the theory that the payment by Irwin (indemnitee) of the judgment against her in favor of the injured party is a *condition precedent to the existence of a cause of action in favor of Irwin against the company* as indeed the policy expressly declares; but that such previous payment need not be made in money, but may be made in property of any kind, including the promissory note of Irwin if such note is *accepted expressly .as payment;* a theory in which we concur." (Italics ours.)

The foregoing language seems very clear, and it can leave no doubt as to how the highest court of this state regarded a similar policy. It is expressly declared that a payment of the judgment by the indemnitee was a condition precedent

to the existence of a cause of action against the insurance company. It may be that we have misunderstood the significance of the terms employed by the supreme court, but, if it be so, we are fearful that we are without satisfactory excuse.

There is some criticism of the declaration of this court as to the incompetency of the legislature to change the terms of the contract of the parties. Probably, the proposition was not expressed as clearly as it should have been. Of course, we assumed that the contract was legal, and what we intended to say was, that, where parties have entered into a lawful contract and have clearly expressed their intention, it does not lie with the legislature to provide a different contract for them.

We would be glad to afford relief to the plaintiff if we could so construe the policy, but we find ourselves unable to do so.

The petition for rehearing is denied.

Chipman, P. J., and Hart, J., concurred.