[Civ. No. 25972. First Dist., Div. One. Apr. 3, 1970.]

HERTZKA & KNOWLES et al., Plaintiffs and Appellants, v.
STANLEY CLEMENT SALTER et al., Defendants and Respondents.

## Counsel

Bacigalupi, Elkus, Salinger & Rosenberg, Claude N. Rosenberg and Gayle Nin Rosenkrantz for Plaintiffs and Appellants.

Wallace, Garrison, Pascoe, Norton & Ray, Wallace, Pascoe, Norton & Ray, Phillip M. Madden and William R. Ray for Defendants and Respondents.

## Opinion

**SIMS, J.**—Plaintiff architects, as the assured under a certificate of errors and omissions insurance issued by Underwriters at Lloyd's, London, have appealed from a judgment in favor of the underwriters in an action in which they sought to recover damages for breach of contract. The action followed the final determination and payment of $374,914.43, a sum in excess of the policy limits, in satisfaction of an owner's claim for alleged breach of professional duty which had been made against the architects, and which had proceeded to arbitration at the instance of the underwriters, after the underwriters, with the knowledge and without objection from

the assured, had rejected a $105,349 settlement offer that was within the $250,000 policy limits.[1]

In making settlement with their assured the underwriters deducted the sum of $38,252.14 for costs and expenses incurred by them in investigating the owner's claim and in conducting the arbitration. The balance of the $250,000 sum insured was paid to the assured about a year after the dates of payment fixed in the arbitrators' award, and shortly after the assured had paid the owner the full award of $354,680.81, together with interest in the sum of $20,233.62. The assured claim, first, that under the circumstances of this case the underwriters were not entitled to deduct the costs and expenses incurred by them from the principal amount of the policy, and, second, that they are entitled to recover the interest they had to pay on the arbitrators' award because the underwriters failed to pay them the indemnity due under the policy at the time the award became payable. Collaterally they assert that they should have interest on the sum of $38,252.14 from the date it was due, insofar as it is not included in an award under their second claim.

It is concluded that in effecting settlement with the assured the underwriters improperly deducted from the sum insured and withheld from the assured, the amount of the costs and expenses incurred by the underwriters on their own behalf after rejecting the settlement offer, and that the underwriters properly refused to pay, in addition to the sum insured, interest which accrued on the sums awarded by the arbitrators from the time they were originally payable until the award was confirmed by final judgment of the superior court.

The facts found by the trial court are those set forth in the parties' stipulation entitled "Submission of Controversy in Action on Agreed Statement of Facts and Issues." The facts include those related above, and, with the policy provisions, will be referred to below where pertinent. ■ The

---

[1] In this action no claim was made that the underwriters were liable in excess of the policy limits because their determination to reject the owner's settlement offer within the policy limits was made without consideration to the rights of the assured. (Cf. *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429-432 [58 Cal.Rptr. 13, 426 P.2d 173]; *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658-661 [253 P.2d 495, 68 A.L.R.2d 883]; *Ivy* v. *Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652, 659-660 [320 P.2d 140]; *Brown* v. *Guarantee Ins. Co.* (1957) 155 Cal.App.2d 679, 682-689 [319 P.2d 69]; 14· Couch on Insurance (2d ed. Anderson, 1965) §§ 51:1-51:7, pp. 505-513; and Annotation, Duty of Liability Insurer to Settle or Compromise (1955) 40 A.L.R.2d 168. Cf. *Hodges* v. *Standard Acc. Ins. Co.* (1961) 198 Cal.App.2d 564, 574-575 [18 Cal.Rptr. 17].) The stipulated facts reflect that the portion of the plans and specifications which gave rise to the owner's claim, were prepared by subcontractors for the assured, and that the subcontractors at all times insisted there was no error or omission in the plans so proposed.

legal principles governing this review are set forth in *Estate of Platt* (1942) 21 Cal.2d 343 [131 P.2d 825], as follows: "An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citation], or a determination has been made upon incompetent evidence [citation]. Under these circumstances, there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law." (21 Cal.2d at p. 352. Accord: *Ecco-Phoenix Elec. Corp.* v. *Howard J. White, Inc.* (1969) 1 Cal.3d 266, 272 [81 Cal.Rptr. 849, 461 P.2d 33]; *U.S. Leasing Corp.* v. *duPont* (1968) 69 Cal.2d 275, 284 [70 Cal.Rptr. 393, 444 P.2d 65]; *Estate of Russell* (1968) 69 Cal.2d 200, 213 [70 Cal.Rptr. 561, 444 P.2d 353]; and *Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].

### The Expenses Incurred by the Underwriters

The assured assert that the obligation of the underwriters to defend against claims is separate and distinct from, and broader than, the obligation to indemnify the assured against claims. The authorities upon which they rely, however, are cases involving policies where the insurer undertook not only to indemnify the insured against the claim, demand, liability or loss, but also expressly undertook to defend the insured.[2] With one exception, those cases involve the question of whether the acknowledged duty to defend must be performed when it appears that the claim or liability asserted may be one which itself is excluded from or otherwise not covered by the insurance. Typical is the following statement from *Karpe* v. *Great American Indem. Co.* (1961) 190 Cal.App.2d 226 [11 Cal.Rptr. 908]: "The plaintiff seeks to recover not only upon the defendant's covenant to indemnify against loss arising out of liability for damages, but also

[2]These authorities are *Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168] ["the company shall defend any suit against the insured"]; *Fireman's Fund Ins. Co.* v. *Chasson* (1962) 207 Cal.App.2d 801 [24 Cal.Rptr. 726] ["defend any suit against the insured"]; *Karpe* v. *Great American Indem. Co.* (1961) 190 Cal.App.2d 226 [11 Cal.Rptr. 908] [covenant to defend]; *Liberty Bldg. Co.* v. *Royal Indem. Co.* (1960) 177 Cal.App.2d 583 [2 Cal.Rptr. 329] ["defend any suit against the insured"]; *Firco, Inc.* v. *Fireman's Fund Ins. Co.* (1959) 173 Cal.App.2d 524 [343 P.2d 311] ["defend in the name of the assured"]; and *Ford* v. *Providence Washington Ins. Co.* (1957) 151 Cal.App.2d 431 [311 P.2d 930] [only concerned with insurer's failure to defend a permissive user as it affected the insurer's being bound by the implied finding that the permissive user was in fact driving]. See also *Eichler Homes, Inc.* v. *Underwriters at Lloyd's, London* (1965) 238 Cal.App.2d 532 [47 Cal.Rptr. 843] [appellant agreed to defend]; *Tulare County Power Co.* v. *Pacific Surety Co.* (1919) 43 Cal.App. 315 [185 P. 399] [the indemnitor agreed that it "will defend such suit"]; and *New Amsterdam Casualty Co.* v. *Cumberland Tel. & Tel. Co.* (6th Cir. 1907) 152 F. 961 ["the company shall defend such suit"].

upon the defendant's covenant to defend him against an action to establish such liability. The obligation to defend is measured by the terms of the policy and the allegations of the complaint against the insured. [Citations.] If the allegations of that complaint show a potential liability within policy coverage, the duty to defend exists. The obligation to defend is broader than the obligation to indemnify." (190 Cal.App.2d at pp. 233-234.) In any event, they do not elucidate the present question of whether the costs and expenses involved in furnishing such a defense are a part of the sum insured.

The certificate of insurance issued in this case "indemnifies the Assured against any claim, or claims, for breach of professional duty in their capacity as ["Architects"] which may be made against them during the period stated . . . by reason of any negligent act, error or omission. . . ." It extends to such claims made against them by reason of the negligence of any employee or the negligence of any firm of architects or engineers employed to carry out work for which the assured may be legally liable.[3]

There is no express covenant in the certificate to defend any suit against the assured. The parties agree, however, that as a contract of indemnity (see Civ. Code, § 2772), the certificate should be interpreted in accordance with the rules laid down in section 2778 of the Civil Code.[4] The assured

---

[3]The policy provides in part: "Now THEREFORE this Insurance, subject to the terms and conditions hereof, indemnifies the Assured against any claim or claims for breach of professional duty in their capacity as stated in the Schedule which may be made against them during the period stated in the said Schedule by reason of any negligent act, error or omission, whenever or wherever committed or alleged to have been committed, on the part of the Assured or any person who has been, is now, or may hereafter during the subsistence of this Insurance be employed by the Assured, in the conduct of any business conducted by or on behalf of the Assured in their professional capacity as stated in the Schedule, and,

"THIS INSURANCE ALSO INDEMNIFIES the Assured against any claim or claims for breach of professional duty which may be made against the Assured during the currency of this Insurance arising from any negligent act, error or omission committed by any Architect or firm of Architects or Engineer or firm of Engineers retained or employed by the Assured, and arising out of work carried out on behalf of the Assured and for which the Assured may be legally liable, . . ."

[4]Civil Code section 2778 provides in pertinent part: "In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears:

"1. Upon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable;

"2. Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof;

"3. An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion;

"4. The person indemnifying is bound, on request of the person indemnified, to

rely on the provisions of subdivisions 3 and 4 of that section. Subdivision 3 makes it clear that the assured as indemnitee would be entitled to be indemnified for any costs of defense which they incurred in good faith and in the exercise of reasonable discretion. However, there is no claim here for any costs expended by the assured. Moreover, the code section does not indicate whether or not such costs, if embraced in the total indemnity furnished the assured, affect the principal sum insured. Subdivision 4 provides that the underwriters, as indemnitors, must defend at the request of the assured, unless a contrary intention appears in the policy. The facts here do not show that the assured requested the underwriters to defend, but reveal that after the settlement offer was rejected by the underwriters, they "assumed and exercised complete and exclusive control over the defense in said arbitration, including the selection and employment of attorneys and expert witnesses and expenditures for various other expenses incident to the arbitration." In any event the latter subdivision does not purport to determine the question at issue here—whether the costs and expenses incurred by the indemnitor, whether requested to act or not, are to be considered part of the principal sum.

Reference to the terms of the policy fails to give a definitive answer to the question. The conditions of the policy[5] indicate several situations in which the costs and expenses of defense will be considered part of the principal sum insured, but contain no express reference to what should be done in the situation which the parties stipulated occurred in this case.

---

defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses, if he chooses to do so; . . ."

[5]The pertinent conditions are as follows: "1. The liability of the Underwriters. hereunder shall not exceed in the aggregate for all claims under this Insurance in any one certificate year (which shall be understood to mean a period of one calendar year commencing each year on the day and hour named in the said Schedule) the sum stated in the said Schedule. 2. The measure of loss shall be such amounts as may be assessed against the Assured either by arbitration, adjudication, or as the result of a law suit, together with all costs or expenses incurred in connection therewith. 3. The Assured shall not admit liability for or settle any claim or incur any costs or expenses in connection therewith without the written consent of the Underwriters, who shall be entitled at any time to take over and conduct in the name of the assured the defense of any claim. Nevertheless, the Assured shall not be required to contest any legal proceedings unless a Lawyer (to be mutually agreed upon by the Assured and the Underwriters) shall advise that such proceedings should be contested. 4. The Undewriters shall not settle any claim without the consent of the Assured. If, however, the Assured shall refuse to consent to any settlement recommended by Underwriters and shall elect to contest or continue any legal proceedings in connection with such claim, then the Underwriters' liability for the claim shall not exceed the amount for which the claim could have been so settled, together with the costs and expenses incurred with their consent up to the date of such refusal, provided always that Underwriters' total liability under this Insurance shall not exceed the sum specified in the Schedule. . . ."

The underwriters rely upon condition "1" (see fn. 5 above). It definitely indicates that the liability of the underwriters shall not exceed $250,000 "for all claims under [the] Insurance in any one certificate year." This clause does not indicate to what the "all claims" refers. The underwriters insist that it must be read with condition "2" (*id.*), that any one claim is encompassed in the "measure of loss" which is defined as "such amounts as may be assessed against the Assured . . . by arbitration . . . together with all costs or expenses incurred in connection therewith," and that therefore they were entitled to reimburse themselves by withholding the amount of costs and expenses from the principal sum insured.

The assured assert with some justification that the claims referred to in condition "1" refer to claims which they as the assured make upon the underwriters for indemnity, and that such claims cannot include costs and expenses which were not either expended by the assured in their own defense, or incurred by the underwriters at the request or on behalf of the assured. "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability, arising from an unknown or contingent event." (Civ. Code, § 2527.) "Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." (Civ. Code, § 2772.) In *Somers* v. *United States Fid. & Guar. Co.* (1923) 191 Cal. 542 [217 P. 746], the court quoted with approval, " 'Contracts of indemnity are distinguishable from those of guaranty and suretyship in that in indemnity contracts the engagement is to make good and save another from loss upon some obligation which he has incurred or is about to incur to a third person, and is not, as in guaranty and suretyship, a promise to one to whom another is answerable.' (22 Cyc. 80.)" (191 Cal. at p. 547.) "The word 'incurred,' when used in connection with bills or expenses, means to become liable for and to have liability thrust upon one by act or operation of law. [Citations.]" (*County of Kings* v. *Scott* (1961) 190 Cal.App.2d 218, 224 [11 Cal.Rptr. 893].) Attention must be directed to the other provisions of the policy to determine whether liability for the costs and expenses incurred by the underwriters was thrust upon the assured when the underwriters took over and conducted the defense of the claim, not at the request of the assured (cf. Civ. Code, § 2778, subd. 4), but apparently on their own initiative after rejecting a settlement offer within the sum insured, with the knowledge and consent of the assured.

Condition "3" (see fn. 5 above) precluded the assured from accepting the settlement offer without the written consent of the underwriters. It also indicates that the only costs and expenses for which the assured would be reimbursed were those incurred with the written consent of the underwriters. This clause contains the authority under which the underwriters

took over and conducted the defense of the claim, but it is silent as to which party should bear the costs and expenses in that event.

Condition "4" (*id.*) deals with the converse of the situation which arose in this case. If the assured refuse to join in a settlement recommended by the underwriters and elect to contest the claim the liability of the underwriters "shall not exceed the amount for which the claim could have been so settled, together with the costs and expenses incurred with their consent up to the date of such refusal, provided always that Underwriters' total liability under this Insurance shall not exceed the sum specified in the Schedule." The "costs and expenses" referred to in this clause are again costs and expenses incurred by the assured for which they may seek indemnity. No mention is made of such costs and expenses as may have been incurred by the underwriters in investigating the claim or conducting a defense or negotiations on their own behalf. Such costs and expenses would not be expenditures to which they would have to formally "consent."

 It is concluded that condition "2" is reasonably open to the interpretation that the measures of loss referred to therein only include "costs or expenses incurred in connection" with an arbitration conducted or other proceedings taken by or on behalf of the assured.[6]

 This construction is sustained by "the general principal that doubts as to meaning must be resolved against the insurer. . . ." (*Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168]. See also *Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 875 [27 Cal.Rptr. 172, 377 P.2d 284]; *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914]; *Underwriters at Lloyd's of London* v. *Hunefeld* (1964) 230 Cal.App.2d 31, 38-39 [40 Cal.Rptr. 659]; and *Hobson* v. *Mutual Benefit Health & Acc. Assn.* (1950) 99 Cal.App.2d 330, 333 [221 P.2d 761]; and *Alberts* v. *American Cas. Co.*

---

[6]Condition "3" (see fn. 5 above) contemplates that the assured may be required to contest a legal proceeding when a lawyer, mutually agreed upon by the parties, shall advise that such proceedings should be contested. The stipulated facts recite: "Following receipt of said claim, negotations were carried on between Continental Insurance Company and the Underwriters toward the end of an amicable adjustment of the claim. During the course of said negotiations Continental Insurance Company offered to accept the sum of $105,349.00 in settlement thereof but said offer was rejected on behalf of the Underwriters with the knowledge and without objection from plaintiffs. . . . The negotiations above mentioned were not productive of a settlement and thereafter, pursuant to the provisions of paragraph 9 of Exhibit B hereto, arbitration was had with respect to said claim. The Underwriters assumed and exercised complete and exclusive control over the defense in said arbitration, including the selection and employment of attorneys and expert witnesses and expenditures for various other expenses incident to the arbitration." In the absence of facts indicating compliance with the second paragraph of condition 3, no opinion is expressed as to the disposition that should be made of costs and expenses incurred after such compliance.

(1948) 88 Cal.App.2d 891, 899-900 [200 P.2d 37]. Cf. *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* at p. 432; *Sampson* v. *Century Indem. Co.* (1937) 8 Cal.2d 476, 480 [66 P.2d 434, 109 A.L.R. 1162]; *Burr* v. *Western States Life Ins. Co.* (1931) 211 Cal. 568, 576 [296 P. 273]; *Underwriters at Lloyd's of London* v. *Hunefeld, supra,* at p. 38; *Tulare County Power Co.* v. *Pacific Surety Co.* (1919) 43 Cal.App. 315, 327 [185 P. 399]; and *Treloar* v. *Keil & Hannon* (1918) 36 Cal.App. 159, 171 [171 P. 823].) It is also consistent with the expectation of the assured under such a certificate. (See *Gray* v. *Zurich Ins. Co., supra,* 65 Cal.2d 263, 269-272; and *Insurance Co. of North America* v. *Electronic Purification Co.* (1967) 67 Cal.2d 679, 689-690 [63 Cal.Rptr. 382, 433 P.2d 174].) ■ In the absence of a clear expression of contrary intent the purchaser of such a certificate would not expect to finance the costs of the underwriters' attempt to avoid a liability that could have been discharged without exposing the assured to loss.

In *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], the court adverted to, but did not adopt (it being unnecessary for the determination of the case), a proposed rule that "whenever an insurer receives an offer to settle within the policy limits and rejects it, the insurer should be liable in every case for the amount of any final judgment whether or not within the policy limits." (66 Cal.2d at p. 430.) The court observed, ". . . there is more than a small amount of elementary justice in a rule that would require that, in this situation where the insurer's and insured's interests necessarily conflict, the insurer, which may reap the benefits of the determination not to settle, should also suffer the detriments of its decision." (*Id.* p. 431.)

In this case the assured have not sought to hold the underwriters responsible for all of the detriment flowing from their decision (cf. fn. 1 above). They only seek to avoid responsibility for the costs and expenses which the underwriters for all practical purposes expended in their own behalf. In *New Amsterdam Cas. Co.* v. *Cumberland Tel. & Tel. Co.* (6th Cir. 1907) 152 F. 961, there was an express covenant to defend in addition to the promise to insure the assured against its liability for damages (see fn. 2 above). Following a judgment in excess of the policy limits, the assured sued the casualty company and was awarded the full amount of the policy plus a pro rata share of the aggregate costs incurred by both the assured and the company, as against the latter's contention that there was only due the policy limit less the costs it actually incurred. Although the case is not controlling, because of the express duty to defend, the reasons for the court's decision are persuasive here. In concluding that the limitation of the company's liability only applied to the liability for damages, and did not include the costs of performing the duty to defend, the court stated:

"And there is abundant reason shown by the contract why it should be most unlikely that the parties should intend such a limitation. By one of the conditions of the insurance, the Telephone Company was prevented from making any settlement, or incurring any expense, or interfering in any negotiation for settlement, or in any legal proceeding. If the Casualty Company should see fit to resist the claim, it could make any defense it pleased, hire such and as many lawyers as it wanted, and prolong the litigation to the last extremity. If its liability for the accident were converted into a fund for carrying on the contest, it could be done without the ordinary risks of litigation, and the only prospect for the assured would be in the remnant, if there should be any. A contract ought not to be construed to an absurd conclusion, if a reasonable one is possible. Moreover, a policy of insurance prepared with much care for the interests of the insurer should be construed favorably to the other party, if the language employed leaves the matter in doubt." (152 F. at p. 963. See also *Cudahy Packing Co.* v. *New Amsterdam Cas. Co.* (C.C. Iowa 1904) 132 F. 623, 625.)

In *Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc., supra,* 1 Cal.3d 266, the trial court awarded the defendant general contractor attorney's fees pursuant to the provisions of a subcontract which provided, "Should litigation be necessary to enforce any term or provision of this agreement, then all litigation and court costs and reasonable attorney's fees shall be borne wholly by the Sub-Contractor." (1 Cal.3d at p. 272.) The plaintiff subcontractor recovered $11,000 on its $14,000 claim, and the defendant who had only admitted liability for $3,000 was awarded costs and attorney's fees of $6,000. The Supreme Court refused to follow the literal interpretation given the clause by the court below. The court ruled, "To the extent that plaintiff was not responsible for necessitating the litigation, the clause was simply inapplicable and costs should have been awarded in accordance with settled standards, as if there had been no contractual provision in this regard. [Citation.]" (1 Cal.3d at p. 274.)

"In construing a contract the court . . . should avoid an interpretation which will make the contract unusual, extraordinary, harsh, unjust or inequitable [citations], or which would result in absurdity [citation] . . . ." (*Harris* v. *Klure* (1962) 205 Cal.App.2d 574, 577-578 [23 Cal.Rptr. 313]. See also *Jenné* v. *Jenné* (1961) 192 Cal.App.2d 827, 831 [13 Cal.Rptr. 897]; and *Straus* v. *North Hollywood Hospital, Inc.* (1957) 150 Cal.App.2d 306, 311 [309 P.2d 541].) " 'A contract will not be so construed as to put one party at the mercy of the other' . . . ." (*Hawley* v. *Orange County Flood etc. Dist.* (1963) 211 Cal.App.2d 708, 716 [27 Cal.Rptr. 478].)

It is noted that a learned treatise on the law of insurance states, "When the insurer has acted properly in refusing to compromise the action, the net

result is the same as though no offer of compromise had ever been made. Hence the liability of the insurer remains measured by the terms of its policy. Otherwise stated, if the insurer has acted properly in refusing to compromise a claim against the insured, it is not liable to him for any excess above the policy limits recovered in the action by the plaintiff." (14 Couch on Insurance (2d ed., Anderson, 1965) § 21:20, p. 522.) ■ Here, as has been demonstrated, the terms of the policy fail to specifically measure the liability of the insurer under the circumstances which developed in this case. It is, therefore, proper to measure the liability in the manner determined above.

The trial court erred in allowing the insurer credit for the sum it expended on its own behalf for costs and expenses of investigating the owner's claim and in defense of the arbitration.

*Interest*

The agreed statement of facts shows that on July 31, 1964 the board of arbitrators rendered a decision for the owners, which when carried out in accordance with its terms resulted in an award in the aggregate sum of $354,680.81, of which sum $327,000 bore interest at the rate of 7 percent per annum from September 1, 1964 and $27,680.81 bore interest at the rate of 7 percent per annum from October 14, 1964. Apparently the owners filed a petition to confirm the award (see Code Civ. Proc., § 1285 et seq.), and on June 24, 1965 a judgment was duly entered confirming the award and ordering judgment in favor of the owners and against the assured in the sum of $374,914.43, representing the principal sums awarded with interest from their respective due dates to date of judgment in the sums of $18,662.16 and $1,571.46, or total interest of $20,233.62. The assured were financially unable to satisfy the award or the judgment until they received payment from the underwriters of $211,747.86 on August 24, 1965. Thereafter, on September 17, 1965 the assured paid the full amount of the judgment (further interest being involved) to the owners in satisfaction of that judgment.

The underwriters support the judgment of the lower court, that the assured was not entitled to interest or damages, on several theories: first, that there was no obligation to pay under the terms of the policy until the assured had actually paid out the amount of the judgment (see Civ. Code, § 2778, subd. 2, fn. 4 above; *J. Frank & Co.* v. *New Amsterdam Cas. Co.* (1917) 175 Cal. 293, 297 [165 P. 927]; *San Pedro Properties, Inc.* v. *Sayre & Toso, Inc.* (1962) 203 Cal.App.2d 750, 756 [21 Cal.Rptr. 844]; *Alberts* v. *American Cas. Co., supra,* 88 Cal.App.2d 891, 898; *Tulare County Power Co.* v. *Pacific Surety Co., supra,* 43 Cal.App. 315, 325-327; *Treloar* v. *Keil & Hannon, supra,* 36 Cal.App. 159, 161; *Rodgers* v. *Pacific*

*Coast Cas. Co.* (1917) 33 Cal.App. 70, 75 [164 P. 1115] [opinion of Supreme Court in denying hearing]; and 11 Couch on Insurance (2d ed. Anderson, 1963) § 44:4, p. 522 and §§ 44:249-44:251, pp. 679-681; 15 *id* (1966) §§ 56:9-56:19, pp. 691-696, particularly § 56:14, p. 6933[7]); second, that in the absence of an express covenant to pay interest on the award or judgment there could be no liability for such interest (see *Sampson* v. *Century Indem. Co., supra,* 8 Cal.2d 476, 479; and *Tulare County Power Co.* v. *Pacific Surety Co., supra,* 43 Cal.App. 315, 329-330; and cf. *Pigg* v. *International Indem. Co.* (1927) 86 Cal.App. 671, 675-676 [261 P. 486]; and Couch on Insurance, *op. cit.*[8]; third, that in any event the underwriters could not be liable for a total sum in excess of $250,000 (see *Tulare County Power Co.* v. *Pacific Surety Co., supra,* 43 Cal.App. 315, 327-330; and 15 Couch on Insurance, *op. cit.,* particularly § 56:15, p. 693; and cf. *Pigg* v. *International Indem. Co., supra,* at pp. 675-676); and finally that any delays occasioned in the payment of the amount of the award were occasioned by the assured's own efforts to resist the imposition of judgment on the award and the assured's extensive review of the proceedings to determine whether an appeal should be taken.

The last contention goes beyond the scope of the agreed statement of facts. The record is silent concerning the reasons, or at whose instigation, the award was contested. Since after the award both the underwriters, to the full limits of the policy, and the assured, to the extent of at least $154,680, were subject to liability, it may be inferred, in the absence of any stipulated facts to the contrary, that the court proceedings were for the mutual benefit of both. There is nothing to indicate that the underwriters tendered the whole or any portion of the indemnity to either the assured, or to the owner who had secured the award, or that the assured tendered any portion of the award to the owner. In any event, it is clear that the award was not reduced to judgment until June 24, 1965, and that the underwriters did not pay any

---

[7]In *Alberts* v. *American Cas. Co., supra,* the court observed, "There are two classes of contracts of indemnity. In one class the indemnitor engages to save the indemnitee from loss, meaning actual loss. In the other class the indemnitor engages to save the indemnitee from liability. In the first class the indemnitee must prove loss actually suffered by him. In a case of a loss by the indemnitee of money held as bailee the indemnitor's liability for the loss does not arise until the debt has been paid and the indemnitee has thus suffered a loss. [Citations.] In the second class the indemnitee need not prove actual loss but only that he has become liable. The indemnitee may, without having paid anything, recover from the indemnitor as soon as liability is legally imposed. [Citations.]" (88 Cal.App.2d at pp. 898-900.)

[8]In *Tulare County Power Co.* v. *Pacific Surety Co., supra,* the court stated, "The sum of the rule as to interest in such cases is this: That an assured who pays a judgment for the full amount limited in a liability policy indemnifying against actual loss, or a judgment for a smaller amount than such limited sum, can recover the sum with interest *only from the time of such payment,* but that interest accruing *on the judgment pending an appeal therefrom* is not an expense of defending the action." (43 Cal.App. at p. 329.)

indemnity until that judgment became final 60 days later (see Cal. Rules of Court, rule 2).

The assured claims that the underwriters were obligated to indemnify them by paying the award when it was calculated (see Civ. Code, § 2778, subd. 1, fn. 4 above; *Alberts* v. *American Cas. Co., supra,* 88 Cal.App.2d 891, 898, fn. 7 above; and 11 and 15 Couch on Insurance, as set forth above fn. 7); and that their failure to do so constituted a breach of the contract which rendered the underwriters liable for, not only interest on the sum withheld, but all of the interest ultimately assessed against and paid by the assured (see Civ. Code, § 3300; *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654, 659; *Hunt* v. *United Bank & Trust Co.* (1930) 210 Cal. 108, 116-117 [291 P. 184]; *Walters* v. *American Ins. Co., supra,* 185 Cal.App.2d 776, 785 [8 Cal.Rptr. 655]; and *Venturi* v. *Zurich General Acc. & Liab. Co.* (1936) 14 Cal.App.2d 89, 90 [57 P.2d 1002][9]). This avenue of approach avoids the otherwise inevitable collision with the theories that interest on the award or judgment is not payable if not expressly covered by the policy, and that the underwriters cannot be called upon to indemnify the assured beyond the sum fixed in the policy.

■ It is unnecessary to unravel and resolve all of these complex issues. If the provisions of the certificate are construed, as contended by the assured, as "an indemnity against liability," the assured were "entitled to recover upon becoming liable." (Civ. Code, § 2778, subd. 1, see fn. 4 above.) The facts recited above do not show that either the assured or the underwriters acknowledged liability to the owners until the judgment confirming the award became final. It was the liability so established for which the underwriters agreed to indemnify the insured up to the sum insured. There was no breach of the contract except for the failure to pay the sum of $38,252.14 as indicated above. All interest which accrued on the obligation to the owners accrued prior to the time the ultimate liability was paid.

Despite the fact that there was no breach of the contract, the assured's claim encompasses the theory that the underwriters should be liable, beyond the policy limits, for interest accruing during an unsuccessful appeal or con-

---

[9] In *Venturi* v. *Zurich General Acc. & Liab. Co., supra,* the court stated, "The cause of action rests on section 3300 of the Civil Code which declares that the measure of damages for the breach of an obligation arising from a contract is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby. Plaintiff's cause of action is not controlled by section 3302 of the code, as that section applies to contracts to pay money only to parties to the contract. Here the insurer contracted not only to reimburse the plaintiff for money actually paid out by the latter, but to protect and hold him harmless against loss arising out of his legal liability as owner of the automobile. This includes so many factors aside from the direct payment of money that a breach cannot be compensated by the payment of the amount due with interest." (14 Cal.App.2d at p. 90.)

test on that part of the award, $250,000, which is represented by the policy limits. If the award were $245,000, and the underwriters unsuccessfully contested it for such period that over $5,000 in interest accrued, consideration would have to be given to the principles advanced in the first part of this opinion in determining where the burden of the sum in excess of the policy limit should fall.[10] Here, however, after the award of $354,680.81, both the assured and the underwriters would be benefited by reducing the award or setting it aside. It is assumed, for lack of other evidence, that the assured, whether alone or with the underwriters, resisted prompt payment of the award, and put the owner to the necessity of a legal action to confirm the award. The certificate does not separately provide for payment of so much of the interest, accruing after entry of judgment or after an award, which is attributable to the full amount of the indemnity furnished by the underwriters. (Cf. *Sampson* v. *Century Indem. Co., supra,* 8 Cal.2d 476, 480; and *Pigg* v. *International Indem. Co., supra,* 86 Cal.App. 671, 675-676.) Nevertheless, there is some authority for allowing the indemnitee that interest, over the policy limit, where the indemnitor conducted all the litigation including the appeal. (See *Cudahy Packing Co.* v. *New Amsterdam Cas. Co., supra,* 132 F. 623, 625.) No precedent has been found for imposing an additional burden of paying such interest on the portion of the judgment equivalent to the indemnitor's undertaking, when the delay has been occasioned jointly or severally by the indemnitee. Since, as noted above, the parties did not consider the liability to the owner as established until judgment was entered on the award, the lower court properly considered the interest accrued to that date as a part of the claim for which the underwriters undertook to indemnify the assured.

■ The sum representing the costs and expenses was wrongfully withheld and should have been paid at or about the time the judgment became final, or in any event no later than September 17, 1965, when the assured paid the judgment. Since the underwriters construed the policy as requiring payment when the liability of the assured was established by final judg-

---

[10]The reasoning from *Maryland Cas. Co.* v. *Omaha Elec. Light & Power Co.* (8th Cir 1907) 157 F. 514, 517-519, which was adopted in *Tulare County Power Co.* v. *Pacific Surety Co., supra,* 43 Cal.App. 315, 329-330, and echoed in *Sampson* v. *Century Indem. Co., supra,* 8 Cal.2d 476, 480-481, is not persuasive. The theory that the indemnitee is permitted to use the sum withheld during the indemnitor's appeal and theoretically earns interest on it, and loses nothing by paying out that interest on termination of the appeal, assumes that the underwriter may subject the indemnitee to such delay under any circumstances. If the appeal or delay is for the sole benefit of the indemnitor there is, as pointed out in the first part of this opinion, cause to put the costs of each delay, including interest, on the indemnitor. In such event the indemnitee should be entitled to the value of the use of his own money during the period of delay, and the indemnitor should repay the indemnitee if the latter is called upon to pay it out to the claimant as interest which accrued solely because of the indemnitor's further contest of the claim.

ment, it is appropriate to fix that date as the date the $38,252.14 should have been paid. The assured are entitled to interest on that sum from August 24, 1965 (Civ. Code, § 3302).

The judgment is reversed and the trial court is directed to enter judgment for the assured plaintiffs for $38,252.14, with interest from August 24, 1965.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied April 21, 1970, and respondents' petition for a hearing by the Supreme Court was denied May 28, 1970.